JANICE K. RICHARDS, Plaintiff-Appellee and Cross-Appellant, v. CHECKER TAXI COMPANY, INC., Defendant-Appellant and Cross-Appellee.

First District (3rd Division)   No. 84—2561

Opinion filed March 16, 1988.

Jenner & Block and Jesmer & Harris, both of Chicago (Anton R. Valu-

kas, Donald R. Harris, Barry Levenstam, and M. David Bieber, of counsel), for appellant.

Louis G. Davidson & Associates, Ltd., of Chicago (Robert L. Reifenberg, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Checker Taxi Co., Inc. (Checker), was found liable for injuries sustained by plaintiff, Janice Richards. Richards was injured as a result of a collision involving a taxi cab, leased by Checker, in which Richards was a passenger. The jury assessed $80,000 compensatory damages and $100,000 punitive damages against Checker in Richards' favor. Checker appeals only from that part of the judgment based upon the jury's finding of wilful and wanton entrustment and the corresponding $100,000 punitive damages award. Richards cross-appeals contending that the jury's verdict of $80,000 compensatory damages is "manifestly inadequate and contrary to the overwhelming weight of the evidence." We reverse that part of the judgment based upon the jury's verdict of wilful and wanton entrustment and the corresponding $100,000 punitive damages award, and we enter judgment in favor of defendant on the issue of wilful and wanton entrustment notwithstanding the verdict. We affirm that part of the judgment based upon the jury's verdict of $80,000 compensatory damages in favor of plaintiff.

On the evening of December 10, 1980, Richards was a passenger in a taxicab operated by Clarence Van Lear and leased from Checker. At the time, the streets were wet and partially slush covered. Richards had instructed Van Lear to take her to the Golden Ox Restaurant on Clybourne Avenue in Chicago. Van Lear approached the restaurant by proceeding north on Halsted Street. As a result of this route, Van Lear was required to turn left across the two southbound lanes of traffic on Halsted Street in order to enter the restaurant's parking lot. As Van Lear entered the parking lot, his taxicab was struck by a car being driven by David Goudy in a southeasterly direction on Halsted. The front of Goudy's car struck the right rear fender of Van Lear's taxicab. When Goudy's car collided with Van Lear's taxicab, Richards fell to the floor of the cab and struck the right side of her head and face against a portion of the cab's interior. A fellow employee drove Richards to Christ Community Hospital. At the hospital, Richards was examined as an outpatient, treated and released.

Richards eventually underwent two surgical procedures on her right ear to correct an inner ear problem. Richards suffers from a

permanent hearing impairment as a result of the collision. Richards has also developed degenerative joint disease in her right jaw as a result of the collision and has been fitted with an oral splinter to help alleviate the pain of this injury.

Following the accident, Richards filed a lawsuit against Checker. In count I of her second amended complaint, Richards alleged that Checker was negligent under the doctrine of *respondeat superior*, and in count III, that Checker was liable to Richards for wilful and wanton entrustment of the taxicab to Van Lear. Count III was renumbered as count II for purposes of trial. Following a jury trial, the jury returned a verdict in favor of Richards for $80,000 compensatory damages on count I and punitive damages of $100,000 in Richards' favor on count III of her amended complaint. Checker moved for entry of a judgment notwithstanding count II of the jury's verdict (Ill. Rev. Stat. 1985, ch. 110, par. 2—1202), which the trial court denied. Judgment was then entered in Richards' favor according to the verdict of the jury.

Checker initially contends that the trial court erred in entering judgment on the jury's verdict that Checker was liable for wilful and wanton entrustment of the taxicab to Van Lear. Checker argues that the jury's verdict is unsupported by the evidence and cannot stand on appeal. We agree.

A cause of action may be maintained against a principal for negligent or wilful and wanton entrustment of a motor vehicle to an agent of the principal. (*Lockett v. Bi-State Transit Authority* (1983), 94 Ill. 2d 66, 445 N.E.2d 310.) Negligence is the failure to exercise the standard of care of a reasonably prudent person under the circumstances of the case. (*Samuels v. Checker Taxi Co.* (1978), 65 Ill. App. 3d 63, 67, 382 N.E.2d 424, 426.) Wilful and wanton conduct is "a course of action which shows actual or deliberate intention to harm, or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." (Illinois Pattern Jury Instructions, Civil, No. 14.01. (2d ed. Supp. 1981) (hereinafter IPI Civil 2d).) Thus, the misconduct that is necessary to prove wilful and wanton entrustment is different than the misconduct that is necessary to prove negligent entrustment. *Samuels v. Checker Taxi Co.* (1978), 65 Ill. App. 3d 63, 67, 382 N.E.2d 424, 426.

In the present case, it is Richards' contention that the failure of Checker to review an abstract of Van Lear's driving record from the Illinois Secretary of State's office was sufficient to support the jury's verdict that Checker was guilty of wilful and wanton entrustment. Initially, Richards offers no authority for her argument that

Checker was required to obtain a copy of Van Lear's driving abstract in order to properly determine whether Van Lear was competent to lease a taxicab.

It appears that the only legislative requirements that are imposed upon Checker to entrust a taxicab to a driver are to ascertain whether the driver has (1) a valid Chicago public chauffeur's license (Chicago Municipal Code, par. 28.1—3(2)(e) (1978)) and (2) a valid Illinois driver's license (Ill. Rev. Stat. 1983, ch. 95½, pars. 6—305(a), (b)). Our examination of the record reveals that Checker requires each of its taxicab drivers to present a valid City of Chicago public chauffeur's license and a valid Illinois driver's license each day prior to being entrusted with a taxicab. Additionally, Checker maintains a practice of contacting a prospective taxicab driver's previous employer to obtain information on his driving record and employment performance with that company. While Richards now disputes that Checker ever contacted Van Lear's former employer, Yellow Cab Company, the record is devoid of any evidence in support of Richards' contention.

We recognize that the determination of whether an individual would be a competent and safe taxicab driver is subjective rather than objective. In the present case, when Checker entrusted Van Lear with a taxicab on December 10, 1980, Van Lear had been leasing a taxicab from Checker for over two years. While working for Checker, Van Lear worked continuously as a taxicab driver and incurred no major driving violations. Based on the record before us, we find no evidence to demonstrate that Checker's conduct was wilful and wanton in entrusting Van Lear with a taxicab.

We therefore conclude that the jury's verdict that Checker's conduct constituted wilful and wanton misconduct when it entrusted Van Lear with a taxicab on December 10, 1980, is unsupported by the record and cannot stand.

■ We next address Richards' cross-appeal. In her cross-appeal, Richards contends that the jury's verdict of $80,000 compensatory damages is "manifestly inadequate and contrary to the overwhelming weight of the evidence." We disagree.

The jury heard evidence demonstrating that Richards' special damages amounted to $8,985.20. Specifically, the jury heard extensive evidence concerning Richards' injuries to her right ear and right jaw. As to Richards' ear injury, the jury was advised that Richards underwent two surgeries to repair a leakage of fluid into the inner ear. Richards now suffers from a diminution of 30 decibels of hearing in her right ear.

With respect to Richards' jaw injury, her treating physician testi-

fied that the majority of cases of unilateral degenerative joint disease are the result of trauma to the jaw. Richards' physician also testified that Richards would probably need surgery performed on her right jaw in the near future and again at a later date. Surgery might also be necessary for Richards' left jaw. The total expense for both of these surgeries was estimated at $15,000 to $20,000.

Initially, we observe that there is nothing in the record to demonstrate that the jury disregarded a proven element of damages in reaching its verdict. Moreover, we are unable to conclude that the $80,000 compensatory damage award is palpably inadequate or against the manifest weight of the evidence. We are therefore compelled to affirm the judgment entered on the jury's verdict of compensatory damages in the amount of $80,000. *Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1074, 502 N.E.2d 315, 332; *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 488, 511 N.E.2d 1206, 1212.

Accordingly, that part of the judgment in favor of plaintiff on the issue of wilful and wanton entrustment is reversed and judgment is entered in favor of defendant notwithstanding the verdict, and that part of the judgment in favor of plaintiff for $80,000 in compensatory damages is affirmed.

Reversed in part and affirmed in part.

WHITE, P.J., and FREEMAN, J., concur.