YVETTE LEDESMA, a Minor by her Mother and Next Friend, Juliette Ledesma, Plaintiff-Appellant, v. CANNONBALL, INC., Defendant-Appellee.

First District (1st Division) No. 1—88—1722

Opinion filed April 24, 1989.

O'Callaghan & Associates, P.C., of Chicago (Joseph M. O'Callaghan and Cindy Van Ryn, of counsel), for appellant.

Mark G. Slutsky & Associates, of Chicago (Mark G. Slutsky, of counsel), for appellee.

JUSTICE QUINLAN* delivered the opinion of the court:

The plaintiff, Yvette Ledesma, a minor, by her mother and next friend, Juliette Ledesma, filed suit against Alan Sherman and his employer, Cannonball, for personal injuries Yvette sustained in an accident with Sherman when he was driving a leased vehicle for Cannonball. During the course of the litigation, plaintiff settled with Sherman, and thereafter she filed a second amended complaint against Cannonball, alleging negligent operation of a motor vehicle by Cannonball under a theory of *respondeat superior* (count I), wilful and wanton operation of a motor vehicle by Cannonball under a theory of *respondeat superior* (count II), negligent entrustment of a motor vehicle to Sherman (count III), and wilful and wanton entrustment of a motor vehicle to Sherman (count IV). Defendant Cannonball moved to dismiss all four counts, and the trial court granted defendant's motion with prejudice as to counts I, II, and III. Defendant then moved for summary judgment on count IV and the trial court granted that motion. The plaintiff moved to vacate the trial court's dismissal of counts I through III, but the motion was denied. Plaintiff now appeals the dismissal of counts I through III, the grant of summary judgment as to count IV, and the denial of her motion to vacate the dismissal of counts I through III.

On August 7, 1979, the plaintiff was riding her bicycle with a group of cyclists east on Wellington Street in Chicago. While crossing Ashland Avenue, the plaintiff collided with a motor vehicle driven by Alan Sherman, a Cannonball employee who was, Cannonball admitted, acting within the scope of his employment at the time. It is disputed whether Sherman or Yvette had the right of way at the intersection.

The defendant Cannonball is a common carrier messenger and delivery service. Just prior to December 20, 1978, Sherman had applied for a position as a driver with Cannonball. Sherman filled out a job application with Cannonball prior to being hired by Cannonball. His job application established that he had a valid Illinois driver's li-

---

*Justice Quinlan participated in this case prior to his assignment to the sixth division.

cense and that he had insurance on his personal motor vehicle. In answer to a question on the application concerning whether his license had ever been suspended or revoked, Sherman responded that it had. Additionally, in response to another question concerning whether he had had any traffic violations in the past year, Sherman wrote "Yes *** License revoked for accident. Traffic ticket for speeding." After completing the application, Sherman was interviewed by Cannonball's personnel assistant, Patricia Vecchio. Ms. Vecchio, in her deposition, stated that Sherman's prior license revocation was not a determinative factor in the decision to hire Sherman, and went on to explain that the decision to hire a driver/messenger was based upon various other factors, such as his or her knowledge of the Chicago area, communication skills, physical appearance, and driving record. There was, she said, no policy in effect at that time to investigate a potential employee's prior driving record beyond the information in the application when the applicant had a valid driver's license.

On or about December 20, 1978, Cannonball hired Sherman. Thereafter, Sherman used his personal vehicle while working for Cannonball, and Cannonball leased it from him and allowed him to operate the vehicle under its authority.

As stated above, the accident between plaintiff and Sherman took place on August 7, 1979, while Sherman was driving for Cannonball. On March 19, 1982, plaintiff sued Cannonball for personal injuries sustained in the accident, and on January 20, 1983, amended her complaint to include Sherman as a defendant. During the course of the litigation, there were numerous dismissals and amendments to various counts of plaintiff's original complaint, which are not pertinent to this appeal. On December 15, 1986, plaintiff executed a "release" of Sherman and accepted $25,000, which was the limit of Sherman's insurance policy, in settlement of her claim against Sherman. The "release" was a form document, but there was additional language typed into the form which stated: "This release does not effect [sic] Yvette Ledesma's cause of action against Cannonball, Inc. or any other party." Based upon the settlement and release, the trial court dismissed Yvette's claims against Sherman with prejudice.

After this dismissal of plaintiff's claims, there were further attempted amendments and subsequent dismissals of various counts of plaintiff's complaint, and, eventually, on June 24, 1987, plaintiff filed a completely new amended complaint against Cannonball. This amended complaint, as stated earlier, set forth four counts against Cannonball: negligent operation of a motor vehicle based on *respondeat superior* (count I); wilful and wanton operation of a motor vehi-

cle based on *respondeat superior* (count II); negligent entrustment of a motor vehicle of Sherman (count III); and wilful and wanton entrustment of a motor vehicle to Sherman (count IV).

Thereafter, on November 6, 1987, the trial court, on defendant's motion, dismissed counts I through III of this complaint with prejudice.[1] Defendant then moved for summary judgment on the only remaining count, count IV, for wilful and wanton entrustment of a motor vehicle. On January 21, 1988, the trial court granted defendant's motion on count IV. Subsequently, plaintiff moved the court to vacate its prior order of dismissal dated November 6, 1987, concerning counts I through III. The plaintiff's motion to vacate relied in part upon plaintiff's release of Sherman which contained the reservation of rights against Cannonball, and she therefore contended that she had not released Cannonball. On April 27, 1988, the trial court denied plaintiff's motion to vacate its dismissal order of November 6, 1987, and, in its order, stated that its denial of plaintiff's motion to vacate was based upon the court's belief that the plaintiff's release of the employee, Sherman, served to release plaintiff's *respondeat superior* claims against the employer, Cannonball.

Plaintiff raises three issues on appeal: (1) whether the trial court erred when it dismissed counts I and II of plaintiff's complaint for negligent and wilful and wanton operation of a motor vehicle based on *respondeat superior*, as well as its denial of her motion to vacate the dismissal of those counts; (2) whether the trial court erred when it dismissed count III of plaintiff's complaint for negligent entrustment, as well as its denial of her motion to vacate the dismissal on that count; and (3) whether the trial court erred when it granted defendant's motion for summary judgment on count IV of plaintiff's complaint for wilful and wanton entrustment.

The plaintiff's first assertion of error is that the trial court's dismissal of counts I and II of her complaint, for negligent and wilful and wanton operation of a motor vehicle under *respondeat superior*, as well as the trial court's denial of her motion to vacate the dismissal, were erroneous. The plaintiff initially argues that the trial

---

[1]Defendant's motion was not labelled as either a motion to dismiss for failure to state a cause of action (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), or as a motion to dismiss based on an affirmative matter (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Neither the motion nor the response mentioned the "release." Additionally, there are no transcripts of the trial court proceedings below concerning any of the motions. However, it appears from the substance of the motion that it was based upon failure to state a cause of action. Consequently, we will treat the motion as a motion to dismiss under section 2—615.

court erred when it determined that her "release" of Sherman also released Cannonball. She contends that it was the intent of the parties that the document entitled "release" was, in fact, a covenant not to sue Sherman, relying upon the express reservation of her right to sue Cannonball in the agreement, as well as the correspondence between the parties, which evidenced, she asserts, the intent of the parties to reserve her right to sue Cannonball. Moreover, she argues, counts I and II stated valid causes of action for negligence and wilful and wanton conduct under a theory of *respondeat superior*, and she claims that there was no improper commingling of claims within the counts.

The defendant, on the other hand, argues that the "release" of Sherman was, in fact, a release and not a covenant not to sue since it was entitled "release" and the release stated that it was a full and final settlement of plaintiff's claim. Inasmuch as plaintiff's claims in counts I and II are wholly vicarious claims based on *respondeat superior*, the defendant contends that plaintiff's full release of her cause of action against Sherman necessarily releases her cause of action against Cannonball as well. Also, the defendant states that because this agreement with Sherman was a release, the express reservation had no effect in preserving any derivative liability there may have been against Cannonball. Thus, the defendant argues that the trial court properly dismissed counts I and II, and in any event, certain correspondence between the parties indicated that plaintiff only intended to reserve the entrustment counts. Defendant also asserts that plaintiff improperly commingled two claims in count I, namely, the negligent operation of a motor vehicle under *respondeat superior* claim and an assigned claim from her mother for medical expenses. Finally, defendant contends that plaintiff's factual allegations were insufficient to support claims for negligent and wilful and wanton operation of a motor vehicle under a *respondeat superior* theory, and, therefore, the trial court properly dismissed those counts as well.

■ Whether an agreement is a release which releases the entire cause of action, or is merely a covenant not to sue which only affects the right to bring suit against a party, depends upon the intent of the parties to the agreement, and this intent is the controlling factor in the determination. (See *Brown v. Timpte, Inc.* (1985), 137 Ill. App. 3d 1053, 1057, 485 N.E.2d 488, 490-91.) The intent of the parties may be ascertained by examination of certain factors, including the words of the agreement, the substance of the agreement, and the amount paid. (*Brown*, 137 Ill. App. 3d at 1057, 485 N.E.2d at 490.) Another factor which may be helpful in ascertaining the intent of the

parties is the label of the document. See *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 371 N.E.2d 888.

Here, the document entitled "release" was a form document, and part of the form included language that the "release" of Sherman was a "full and final satisfaction" of plaintiff's claim. Although these indications would appear to imply that the form document was a release, we find that the typed-in, express reservation of plaintiff's rights against Cannonball in the document is dispositive that the intent of the parties here was that this agreement was to be a covenant not to sue. The typed-in reservation of the plaintiff's right to sue Cannonball without limitation is a clear and unambiguous expression of the intent of the parties to preserve any claim against Cannonball. Because the terms of the reservation are clear and unambiguous, we need not look outside the four corners of the document, and, thus, we conclude that the agreement here was a covenant not to sue Sherman.

Under Illinois law, a covenant not to sue an employee will not act as a bar to an action against the employer under a theory of *respondeat superior* when the covenant not to sue contains an express reservation of the covenantor's right to proceed against the employer. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259; *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 192-93, 488 N.E.2d 332, 334.) Recently, our supreme court, in *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 30, 499 N.E.2d 450, 453, examined this rule that a covenant not to sue an employee will not bar a *respondeat superior* action against an employer, where the covenant contains an express reservation. The court noted that this rule was consistent with another "long-established rule that the agreement is the controlling factor and the governing fact to be determined is the intent of the parties." (*Stewart*, 114 Ill. 2d at 30, 499 N.E.2d at 453.) The *Stewart* court went on to find that the express reservation of plaintiff's right to sue "any other person or persons" in the covenant not to sue presented there "explicitly and unambiguously" demonstrated that the parties there intended the reserved right to be all-inclusive even though the employer was not specifically named. *Stewart*, 114 Ill. 2d at 30, 499 N.E.2d at 453.

Hence, based upon the case law, it is clear that the covenant not to sue here, which expressly reserved plaintiff's right to sue Cannonball, did not extinguish Cannonball's potential liability under a theory of *respondeat superior*. The language of the covenant is controlling, and here it is unambiguous in its terms. Moreover, the clear lan-

guage of the reservation is all-inclusive as to the types of claims reserved. There is also no basis for the defendant's alternative contention that plaintiff only reserved the entrustment claims, because the language of the reservation is without any limitation as to the nature of the reserved rights. Therefore, the defendant's arguments to the contrary are unpersuasive, particularly in light of the *Edgar County* and *Stewart* decisions, which the defendant claimed, at oral argument, did not apply to this case because those cases dealt with covenants not to sue, and not releases. (See *Edgar County*, 57 Ill. 2d 298, 312 N.E.2d 259; *Stewart*, 114 Ill. 2d 23, 499 N.E.2d 450.) We disagree with the defendant's arguments and find those cases to be directly applicable since, as stated above, we find that the agreement here was a covenant not to sue. Thus, plaintiff's claims against Cannonball were not barred.

■■■■ Even though the covenant not to sue does not bar plaintiff's *respondeat superior* claims, the next issue that we must consider is whether the *respondeat superior* claims were factually sufficient to withstand a motion to dismiss for failure to state a cause of action. A negligence cause of action based on *respondeat superior* must allege sufficient facts to establish that the employee owed a duty to plaintiff, that he breached that duty, that the breach proximately caused plaintiff's damages, and that the employee was acting within the scope of his employment during the time the alleged negligence occurred. (See *Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 502 N.E.2d 454.) A wilful and wanton cause of action based on a *respondeat superior* theory is similar to a negligence action, except that the level of the defendant's conduct is more than mere negligence, but less than intentional conduct. The allegations of a wilful and wanton claim must set forth facts to establish that the employee, within the scope of his employment, acted with wilful and wanton disregard or conscious indifference towards the plaintiff. (See *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015; W. Keeton, Prosser & Keeton on Torts §70 (5th ed. 1984); see generally *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925.) Such a claim may also give rise to punitive damages. (See *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509; *Bates*, 150 Ill. App. 3d 1025, 502 N.E.2d 454.) We additionally note that although separate causes of action should be set forth in separate counts to avoid confusion, this error is not necessarily fatal to an entire cause of action. See Ill. Rev. Stat. 1987, ch. 110, par. 2—613.

■■■ Plaintiff's complaint here states sufficient facts to support a

negligence claim based on *respondeat superior* because the facts alleged in count I claim that Sherman, a Cannonball employee acting within the scope of his employment, committed certain negligent acts or omissions, including the failure to stop for a red light and the failure to obey the speed limit. Count I also alleged that these acts were the proximate cause of plaintiff's damages. Although plaintiff, in the same count, also claimed damages for her medical expenses, a claim her mother assigned to her, we do not find the inclusion of this additional claim fatal to her negligence claim. Count I, therefore, should not have been dismissed.

Count II, in substance, alleged the same facts as count I, but added the key phraseology to the effect that these same acts were committed with "utter indifference and conscious disregard" for plaintiff's safety. Our supreme court has held that the addition of these terms to the recitation of previously alleged negligent acts are proper and sufficient allegations of wilful and wanton conduct. (*O'Brien*, 83 Ill. 2d 462, 415 N.E.2d 1015.) As the supreme court said in *O'Brien*, when the allegations are insufficient to determine if the defendant acted with reckless disregard, the facts themselves must be closely scrutinized to determine whether the acts were merely negligent or whether they were performed with conscious disregard for the plaintiff's safety. (*O'Brien*, 83 Ill. 2d at 469, 415 N.E.2d at 1018.) Thus, the court stated that a plaintiff should, at the very least, be allowed the opportunity to present evidence in support of his allegations of wilful and wanton misconduct. (*O'Brien*, 83 Ill. 2d at 469, 415 N.E.2d at 1018.) Similarly here, the plaintiff should be allowed to present evidence in support of her allegations on the determination of whether the alleged acts were performed negligently or with conscious disregard for her safety. Count II, therefore, was both legally and factually sufficient and should not have been dismissed.

The second issue raised by the plaintiff is whether the trial court properly dismissed her negligent entrustment claim. Plaintiff argues that despite Cannonball's admission that Sherman was acting within the scope of his employment, Cannonball has not admitted responsibility for the accident and, thus, the claim was proper. The defendant, however, contends, in the nature of an affirmative matter type of argument (see Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)), that because it admitted that Sherman was acting within the scope of his employment, the negligent entrustment count cannot stand.

The case of *Neff v. Davenport Packing Co.* (1971), 131 Ill. App. 2d 791, 268 N.E.2d 574, cited by both parties, is applicable and persuasive here. There, the plaintiff was in an accident with an em-

ployee driving a vehicle for his employer. Plaintiff sued the driver's employer alleging both negligence under a *respondeat superior* theory, as well as negligent entrustment. (*Neff*, 131 Ill. App. 2d 791, 268 N.E.2d 574.) The *Neff* court, in ruling on a motion to dismiss the negligent entrustment count, dismissed the negligent entrustment count because the employer had admitted that the employee was acting within the scope of his employment and that it would be liable for those acts under the doctrine of *respondeat superior*. The *Neff* court reasoned that, in light of the employer's admission, the negligent entrustment count could not stand even as an alternative theory of liability because, if it allowed the count to stand, the plaintiff could introduce potentially inflammatory proof of collateral misconduct, such as other auto accidents and arrests for violations of motor vehicle laws, which would only serve to obscure the basic issue of driver-employee negligence in the negligence count and, thus, bring in otherwise irrelevant matters. *Neff*, 131 Ill. App. 2d at 792, 268 N.E.2d at 575; see also *Lockett v. Bi-State Transit Authority* (1983), 94 Ill. 2d 66, 72-73, 445 N.E.2d 310, 313-14; *Pelczynski v. J.W. Peters & Sons, Inc.* (1989), 178 Ill. App. 3d 882, 533 N.E.2d 1137.

■ Here, just as in *Neff*, the employer, Cannonball, admitted that Sherman, the driver-employee, was acting within the scope of his employment, and, therefore, admitted that if Sherman were found to be negligent under the negligence count, then it would be liable under the *respondeat superior* doctrine. Thus, here, as in *Neff*, there was no reason to admit irrelevant, potentially inflammatory evidence of Sherman's past driving record which would obscure the basic issue of Sherman's negligence. Accordingly, because we have found that the negligence count under *respondeat superior* was improperly dismissed, the negligent entrustment count here must fall. The trial court's dismissal of the negligent entrustment count was, therefore, proper.

The third issue raised by plaintiff on review is whether the trial court properly entered summary judgment for Cannonball on the wilful and wanton entrustment count of her complaint.[2] She contends

---

[2]We note here that the issue on appeal concerning the wilful and wanton entrustment count is based on the trial court's grant of summary judgment and is not, as was the situation concerning the negligent entrustment count, based on a motion to dismiss. Thus, although our analysis of the negligent entrustment count may also be applicable to the issue of whether the wilful and wanton entrustment count stated a cause of action for purposes of a motion to dismiss, that specific issue has not been raised on appeal, and our analysis is premised upon the fact that a proper cause of action was pled.

that the trial court erred when it granted summary judgment for defendant because there was a genuine issue of material fact as to whether Sherman was a fit employee and whether Cannonball was reckless in employing him. Cannonball, however, contends that plaintiff failed to produce any evidence in support of her allegations which would show that Cannonball ratified or approved Sherman's conduct in relation to the accident, that Sherman was not fit to drive for Cannonball, or that Cannonball was reckless in its entrustment of the vehicle to Sherman.

 █ Entry of summary judgment is proper where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. (*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 533 N.E.2d 75.) In a claim for wilful and wanton entrustment, one must again show that the defendant engaged in a course of action which showed an actual or deliberate intent to harm, or an utter indifference or conscious disregard for the safety of others, namely, the plaintiff. *Richards v. Checker Taxi Co.* (1988), 168 Ill. App. 3d 154, 156, 522 N.E.2d 650, 651-52.

In *Richards*, this court was presented with a factually similar situation. There, plaintiff was injured while a passenger in a Checker taxi. Plaintiff sued Checker for negligently entrusting the leased taxicab to its driver-employee. The basis of the appeal was whether Checker's failure to review the driving record of its employee-driver was a sufficient basis to support a jury verdict against Checker on the wilful and wanton entrustment count. The court found that Checker's failure to review the driving record of its employee-driver did not amount to wilful and wanton conduct. (*Richards*, 168 Ill. App. 3d 154, 522 N.E.2d 650.) The court determined that there was no authority to require Checker to obtain a copy of the driver's record before entrusting the vehicle to him, and noted that the only requirements, taking into account certain statutory obligations, were that the driver, because he was a taxi driver, have a valid chauffeur's license and, because the vehicle was leased to the driver, that he have a valid driver's license. (See *Richards*, 168 Ill. App. 3d at 157, 522 N.E.2d at 652; see also Ill. Rev. Stat. 1987, ch. 95½, par. 6—305(a).) The evidence in *Richards* showed that the driver met those requirements, and that, consequently, there was no evidence of wilful and wanton entrustment. (*Richards*, 168 Ill. App. 3d 154, 522 N.E.2d 650.) The court further noted that the evidence showed that, in the two years that the driver worked there prior to the accident, he had never had any major traffic violations.

 Similarly, the plaintiff here presents no authority which

would suggest that Cannonball was required to investigate Sherman's past driving record. Like the evidence presented in *Richards*, the evidence here showed that Cannonball checked to make sure that Sherman had a valid Illinois driver's license and that he was insured before hiring him and entrusting him with the vehicle. Moreover, we note that, similar to the evidence in *Richards*, the evidence here showed that while Sherman was in Cannonball's employ, he had no major traffic violations. (See *Richards*, 168 Ill. App. 3d 154, 522 N.E.2d 650.) Hence, because there was no dispute of material fact, the trial court's entry of summary judgment in favor of Cannonball was proper here since Cannonball was, as a matter of law, entitled to judgment.

We are unpersuaded by plaintiff's argument that *Richards* is distinguishable on the basis that there Checker did not know that the employee's driver's license had been previously revoked, as Cannonball did here, because the *Richards* court specifically found that prior driving problems are irrelevant as long as the employee has a valid license. (See *Richards*, 168 Ill. App. 3d 154, 522 N.E.2d 650.) Moreover, there is no evidence here, contrary to plaintiff's claims, that Cannonball ratified or approved of Sherman's allegedly improper conduct in relation to the accident.

For all the foregoing reasons, the judgment of the trial court dismissing the *respondeat superior* counts, counts I and II, based on negligence and wilful and wanton conduct is hereby reversed, and those two counts are therefore remanded to the trial court for further proceedings; the judgment of the trial court dismissing the negligent entrustment count, count III, is affirmed; and the trial court's entry of summary judgment for Cannonball on the wilful and wanton entrustment count, count IV, is affirmed.

Reversed and remanded in part; affirmed in part.

MANNING, P.J., and O'CONNOR, J., concur.