*595 OPINION OF THE COURT
David O. Boehm, J.
Defendant, Elba Air Dusters, obtained an agriplan aerial applicator’s insurance policy from plaintiff, Monarch Insurance Company of Ohio. The policy classified seven types of liability coverage, of which Elba purchased only "Bodily Injury (Excluding passengers and Chemical Liability)” and "Property Damage (Excluding Chemical Liability)” coverage. Chemical liability coverage was available but not purchased by Elba. Defendant, Eugene Hetherly, is the sole shareholder of Elba.
Defendants, Kathleen and John Griffiths, sued Hetherly, Elba, and defendant, Franklin Kepler, to recover for personal injuries which Kathleen Griffiths suffered after being accidentally sprayed with pesticides and fungicides while Hetherly was spraying these chemicals from an airplane over a field owned by Kepler adjacent to the Griffithses’ house. The Griffithses’ supplemental complaint alleges that the aerial application of the chemicals was negligent, and that the defendants were also negligent in failing to warn Kathleen beforehand that the field was going to be sprayed.
Monarch then brought this action for a declaratory judgment, and now moves for summary judgment declaring that its insurance policy does not provide liability coverage for the Griffithses’ claims, and that it has no duty to defend Elba and Hetherly in the Griffithses’ action.
Part III of the policy, entitled "Liability Coverage Excluding Chemical Liability”, provides that Monarch "will pay claims for bodily injury to anyone except a passenger who is injured resulting from the ownership, maintenance or use of [the insured’s] aircraft”, and that "[n]o coverage applies to bodily injury which is caused by or arises out of the use of chemicals”. The policy excludes "claims for bodily injury * * * resulting directly or indirectly from chemicals, fertilizers or seeds”.
It is well settled that an insurer’s duty to defend is broader than its duty to indemnify (Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 154). "This principle flows from the fact that the duty to defend arises from the insurer’s contractual obligation to the insured, whereas the liability to indemnify depends upon the law of negligence” (Muhlstock & Co. v American Home Assur. Co., 117 AD2d 117, 122). Whether the insurer has a duty to defend depends "upon whether the *596 allegations of the complaint are within the scope of the risk covered by the policy” (Cohen v Employers Reinsurance Corp., 117 AD2d 435, 438; see also, International Paper Co. v Continental Cas. Co., 35 NY2d 322, 326-327). The duty to defend is not affected simply because alternative causes of action are pleaded in the complaint, some of which are outside the coverage afforded by the policy (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 669-670).
In opposing Monarch’s motion, Hetherly and Elba place great reliance upon a provision in part III of the policy, which, after stating that claims for bodily injury resulting from chemicals, fertilizers or seeds are excluded from coverage, provides: "However, this exclusion does not apply to bodily injury * * * resulting from collision of [the insured’s] aircraft with the surface of any object or intentional 'dumping’ in an effort to avoid such collision”. The defendants contend that the incident was caused by a defective or leaking valve on one of the aircraft’s spray booms, through which the chemicals are pumped, and that such a cause is encompassed by the quoted language. However, no claim is made nor proof submitted that plaintiff’s chemical exposure was the result of either a collision or an intentional dumping to avoid a collision.
Absent also is any evidence that a defective or leaking valve caused plaintiff to be sprayed. The only proof offered is a single statement Hetherly made in his examination before trial that a Mr. Mazzarella (unidentified) said he had a nozzle that would trail on the left boom. It is not known when Mazzarella made this purported observation. Significantly, Hetherly further testified that he did not see any material come out of the nozzle when he turned off the hopper, and that he "probably could have seen it if [he] was really looking for it”. Hetherly denied experiencing any prior problems of the spray not stopping when the hopper was turned off. Even if a defective valve were relevant as to whether the policy afforded coverage, Hetherly’s isolated statement, based on hearsay and standing alone, is insufficient to defeat a motion for summary judgment (see, Zuckerman v City of New York, 49 NY2d 557, 562).
During oral argument, the Griffithses conceded that their claims predicated on the negligent application of chemicals were outside the risks covered by the policy. But, the Griffithses contend, their separate action for negligent failure to warn is a separate and distinct claim which comes within the *597 covered risks. Their reliance on the cases discussed below to support this position is, however, misplaced.
Recently, the Court of Appeals held in Cone v Nationwide Mut. Fire Ins. Co. (75 NY2d 747, 748) that a homeowner’s insurance policy, which excluded coverage for occurrences "arising out of the ownership, maintenance, or use of * * * a motor vehicle”, nevertheless afforded coverage for a claim based on the insured’s negligent entrustment of a motor vehicle to his son. In so holding, the court stated that the focus of the claim was not directly related to the son’s negligent operation of the vehicle, but rather on the father’s negligent entrustment to his son of a dangerous instrumentality (75 NY2d, supra, at 748-749). Similarly, the Griffithses contend that the focus of their failure to warn claim is not on the negligent application of chemicals but, rather, on the failure to give advance warning that the field was going to be sprayed.
Preliminarily, there is a serious question whether the holding in Cone (supra) would extend to every kind of liability policy. The provisions of a homeowner’s policy are not typically subject to diversified coverage, whereas liability policies procured by businesses frequently offer optional areas of protection, as in the subject policy, which the insured may elect to purchase or not, as Elba did here.
This view is supported by the fact that Cone (supra) did not create new law but, rather, was based on a holding the court had already made in affirming Lalomia v Bankers & Shippers Ins. Co. (35 AD2d 114, affd 31 NY2d 830). The facts in Lalomia were similar to those in Cone and arose out of an accident between an automobile and a motorized bicycle operated by a 12-year-old boy. A homeowner’s policy issued to the boy’s parents excluded from its coverage the ownership, maintenance, operation or use of motor vehicles while away from the insured premises. Since the accident occurred several blocks from the insured premises, the court held that the insurer had no duty to defend or indemnify insofar as the ownership, maintenance, operation or use of the vehicle was applicable. Nonetheless, noting that the complaint alleged that the insured father was negligent in placing a dangerous instrumentality in the possession of a 12 year old which could be used in a dangerous manner likely to cause harm to others, the court held that such theory, grounded in common-law negligence, "is not directly related to the 'ownership, maintenance, operation, use’ of the vehicle and imposes an obligation *598 upon the insurer within the terms of the policy” (35 AD2d, supra, at 117). That the court was not breaking new ground by its decision in Cone is plainly evident from its further statement that since "the rule of Lalomia was made 18 years ago, insurers have had an opportunity to clearly exclude claims based on negligent entrustment from coverage in homeowner’s liability policies” but have failed to do so (75 NY2d, supra, at 749).
In the interim between Lalomia and Cone (supra), the Court of Appeals upheld a decision that an insurer had no duty to defend a petroleum transporting company for claims arising out of an explosion which occurred when gasoline was being transferred between tractor trailers. There, the policy excluded coverage for injuries arising out of the loading or unloading of a motor vehicle (Matter of Duncan Petroleum Transp. v Aetna Ins. Co., 96 AD2d 942, affd 61 NY2d 665). Seeking to avoid the impact of the exclusion, the transporting company had argued that the accident was caused by such factors as a failure to inspect the vehicles, a failure to train and supervise personnel, the use of dangerous transfer procedures, and improper maintenance and design of vehicles. In rejecting this argument, the Appellate Division pointed out: "Nothing about the foregoing asserted factors, even if they were actually involved in causing the explosion, would negate the unequivocal and unchallenged fact that the accident arose out of the loading or unloading of the automobile. [The insured’s] factors of causation serve to do no more than provide reasons or subfactors explaining why the accident arose out of the loading or unloading of the vehicle. Acts or omissions which predated the loading operation but which allegedly brought about the explosion during the loading do not prevent invocation of the exclusion clause. Whatever the originating reason for the explosion, it arose out of the use of the vehicles while they were being loaded” (96 AD2d, supra, at 943). The Court of Appeals affirmed for the reasons stated by the Appellate Division.
That the affirmance in Duncan (supra) occurred after the court had affirmed Lalomia (supra), would plausibly suggest that the Cone decision (supra) is limited to homeowner’s insurance policies. Such a conclusion is also consistent with the general rule that, in determining whether an insurance policy provides coverage, the court must look past the labels placed on the causes of action to the facts alleged in the underlying complaint. The "insured may not, by use of a *599 ’shotgun’ allegation, create a duty to defend beyond that which was anticipated by the parties when they entered into the policy contract” (Village of Newark v Pepco Contrs., 99 AD2d 661, 662, affd 62 NY2d 772; see also, New York Cas. Ins. Co. v Halley Elec. Co., 148 AD2d 967; Ruggerio v Aetna Life & Cas. Co., 107 AD2d 744).
The other cases cited by the Griffithses do not require a contrary conclusion. In Niagara County v Utica Mut. Ins. Co. (80 AD2d 415), it was held that a pollution exclusion clause contained in a multiperil liability policy issued to the insured county did not relieve the insurer of its duty to defend the county in a series of lawsuits known as the "Love Canal” litigation. The Niagara County case was unique, however, in that the pollution exclusion was required by statute, and intended to make polluters bear the full risk associated with their conduct by preventing them from obtaining low-cost protection from potential liability through insurance. Thus, there existed the serious question whether the exclusion was applicable to a municipal corporation which was not an actual polluter. As the court acknowledged, none of the claims seriously contended that Niagara County was directly responsible for dumping the contaminants (80 AD2d, supra, at 418, n 2). Basic to the court’s holding was that the underlying complaints contained numerous allegations of negligence on the part of the county (e.g., failure to warn and safeguard citizens; failure to enforce health regulations; failure to remove chemicals and citizens from the contaminated area; and negligently conveying property in the area without notice of the infirmities, and in violation of ordinances and regulations), all of which fell outside of any policy exclusion (80 AD2d, supra, at 420).
Lastly, in Beauty by Encore v Commercial Union Ins. Co. (92 AD2d 855), cited by the Griffithses, it was held that an exclusion in a general liability insurance policy providing there would be no coverage for bodily injury "due to the rendering of or the failure to render any * * * tonsorial * * * services or treatments”, did not relieve the insurer of its duty to defend a personal injury action alleging that the insured beauty shop failed to warn a patron of the dangers of smoking after her hair had been treated with flammable substances. In so holding, the court concluded that the exclusion was inapplicable because the patron’s injuries were not caused by the rendering or the failure to render tonsorial services, i.e., the lighting of a cigarette was not part of the tonsorial service (92 *600 AD2d, supra, at 856). Here, in contrast, the Griffithses’ injuries were caused by Elba’s and Hetherly’s use of chemicals, a risk clearly and unambiguously excluded from coverage under the subject policy (see, Hink v Imperial Cas. & Indem. Co., 402 NW2d 605 [Ct App, Minn]).
I find the underlying facts and the principles discussed and decided in Lionel Freedman, Inc. v Glens Falls Ins. Co. (27 NY2d 364) more controlling. There it was held that the insurer had no duty to defend an action alleging the negligent operation of an elevator, where the insured elected not to purchase available coverage for injuries arising from the use of an elevator.
For the foregoing reasons, plaintiffs motion for summary judgment is granted.