No. 78,661

KEITH MARQUIS, *et al.*, *Appellees*, v. STATE FARM FIRE AND
CASUALTY COMPANY, *Appellant*.
(961 P.2d 1213)

Opinion filed June 5, 1998.

*Michael J. Dutton*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Arlen L. Tanner*, of the same firm, was with him on the briefs for appellant.

*Edward M. Boyle*, of Payne & Jones, Chtd., of Overland Park, argued the cause, and *John H. Johntz, Jr.*, and *Donald R. Whitney*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Barbi Marquis was severely injured in an automobile collision. Jerry Auck, driving a vehicle within the scope of his employment by his wife, caused Marquis' injuries. State Farm Fire and Casualty Company (State Farm) appeals from a declaratory judgment that Marquis' claims of negligent hiring, retention, or supervision were permitted by the parties' settlement agreement and covered under its contractor's policy. We affirm.

On September 14, 1993, Barbi Marquis was injured when the car that she was driving was struck by a Mitsubishi pickup driven by Jerry Auck, which had run a red light. Jerry Auck's blood alcohol level was found to be .20 following the accident. The truck was owned by State Farm's insured, Sharon Auck, the wife of Jerry Auck. She was the owner of a sole proprietorship, Fresh Approach Cleaning Professionals (Fresh Approach). Fresh Approach was insured by State Farm Fire and Casualty Company under a contractor's policy. Jerry Auck was an hourly employee of Fresh Approach,

earning approximately $5.50 per hour. At the time of the accident, Jerry Auck was acting in the course and scope of his employment with Fresh Approach.

Keith Marquis, both as conservator for his wife, Barbi, and individually (plaintiffs), filed the following action against Jerry and Sharon Auck in Johnson County District Court:

### "COUNT I

"1. Keith Marquis is the husband and conservator for Barbi L. Marquis. He brings this lawsuit on her behalf and on his own behalf.

"2. Jerry L. Auck, defendant, is a resident of Johnson County, Kansas . . . .

"3. On the 14th day of September, 1993, at approximately 5:37 p.m. in the evening, Barbi Marquis was operating a 1987 Suzuki Jeep in the outside left-turn lane of the northbound Strang Line Road at 119th Street.

"4. At about the same time and place as alleged above, Jerry Auck was operating a 1989 Mitsubishi westbound on 119th Street, in the city of Olathe, Johnson County, Kansas.

"5. As Barbi Marquis made her left turn with a left-turn arrow, Jerry Auck, coming westbound on 119th Street, ran a red light and struck Barbi Marquis' vehicle.

"6. As a result of the collision, Barbi Marquis sustained permanent brain injury and other serious personal injury, which has [*sic*] totally disabled her. She has incurred past medical bills and will incur future medical expenses. Her earnings capacity has been destroyed, and she has suffered great pain of mind and body.

"7. Keith Marquis has lost the consortium and services of Barbi Marquis as a result of the negligence of Jerry Auck.

"WHEREFORE, plaintiffs pray that they be granted judgment in a sum in excess of $50,000 against the defendants and for their costs and such other relief as to the court appears just and proper.

### "COUNT II

"8. Plaintiffs reallege the allegations contained in Paragraphs 1 through 7 of Count I as if fully set forth hereafter.

"9. Jerry L. Auck and/or Sharon Auck own and operate a janitorial company called Fresh Approach. Sharon Auck was the owner of the 1989 Mitsubishi which Jerry Auck was driving on the 14th day of September, 1993.

"10. Jerry Auck was an agent, employee, and/or otherwise working within the scope and employment of Fresh Approach and/or his wife, Sharon Auck, d/b/a Fresh Approach.

"WHEREFORE, plaintiffs pray that they be granted judgment in a sum in excess of $50,000 against the defendants and for their costs and such other relief as to the court appears just and proper."

The Aucks answered the petition, admitting that Jerry Auck ran the red light and struck the Marquis vehicle. They also admitted

that Jerry Auck was an employee of Fresh Approach at the time of the accident.

At the time of the accident, Sharon Auck's vehicle was covered by a State Farm Mutual Auto insurance policy with a $100,000 limit, which covered Jerry Auck's use of the vehicle. Sharon Auck's business was covered by a State Farm Fire and Casualty Company contractor's insurance policy with a $1,000,000 policy limit. Sharon Auck was also covered by a State Farm Fire and Casualty Company homeowner's extra policy with a policy limit of $300,000.

The plaintiffs and both State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company entered into a settlement agreement in late 1994. The agreement was drafted by counsel retained to represent the Aucks under Sharon Auck's State Farm Mutual Automobile Insurance Company policy. It provided:

"WHEREAS, Keith Marquis, individually, and in his capacities as husband of Barbi L. Marquis and Conservator of the Estate of Barbi L. Marquis, has caused a lawsuit to be filed against Jerry L. Auck and Sharon Marie Auck in the District Court of Johnson County, Kansas, as the result of an automobile accident which occurred on or about the 14th day of September, 1993 at or near the intersection of 119th Street and Strangline Road in Olathe, Johnson County, Kansas, all as more specifically set forth in the Petition in the case styled *Keith Marquis, as Conservator and Husband and in Such Capacities and on behalf of Barbi L. Marquis, and Keith Marquis, Individually, Plaintiffs, v. Jerry L. Auck and Sharon Auck, Defendants*, Case No. 94-C-5244, which is now pending in the District Court of Johnson County, Kansas; and

"WHEREAS, Jerry L. Auck and Sharon Marie Auck are covered for the aforesaid accident by an automobile insurance policy, No. 2816-322-810-16C, issued by State Farm Mutual Automobile Insurance Company; and

"WHEREAS, there may be additional liability coverage in the amount of $1,000,000.00 for the aforesaid accident and claims under a Contractors policy issued by State Farm Fire and Casualty Company, Policy No. 91-03-6775-5, and in the amount of $300,000.00 under a Homeowners policy issued by State Farm Fire and Casualty Company, Policy No. 16-B7-8051-2; and

"WHEREAS, State Farm Mutual Automobile Insurance Company has offered to pay its full bodily injury liability limits of $100,000.00 in settlement of the claims set forth in the aforesaid Petition; and

"WHEREAS, State Farm Fire and Casualty Company has agreed that it is willing to participate in a declaratory judgment action to determine whether or not it owes coverage under either or both of its aforesaid policies, and has further

agreed that if it should be determined by the court that it owes coverage under said policy or policies, it will forthwith pay the full amount of the liability limits of said policy or policies in settlement of the claims arising out of the aforesaid accident, and will make no effort to litigate the issue of fault or the amounts of coverage under the said policies;

"NOW, THEREFORE, the parties hereto agree as follows:

"1. In consideration of the payment of the sum of One Hundred Thousand and no/100 ($100,000.00) Dollars, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Keith Marquis, in his individual capacity, and in his capacity as husband of Barbi L. Marquis, and in his capacity as Conservator of the Estate of Barbi L. Marquis, hereby releases and forever discharges Jerry L. Auck, Sharon Marie Auck, Sharon Marie Auck d/b/a Fresh Approach, the State Farm Mutual Automobile Insurance Company, their heirs, executors, successors, agents and assigns, and all other persons, firms or corporations, liable or who might be claimed to be liable, except State Farm Fire and Casualty Company, none of whom admit liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries to Barbi L. Marquis, known and unknown, and all pain, suffering and disability resulting from said injuries which have resulted or may in the future develop from the aforesaid automobile accident which occurred on or about the 14th day of September, 1993, at or near the intersection of 119th Street and Strangline Road in Olathe, Johnson County, Kansas.

"2. Keith Marquis and State Farm Fire and Casualty Company agree that they will participate in a declaratory judgment action for the purpose of determining whether or not State Farm Fire and Casualty Company owes coverage for the aforesaid accident under its Contractors policy No. 91-03-6775-5 and/or its Homeowners policy No. 16-B7-8051-2.

"3. State Farm Fire and Casualty Company agrees that if it should be determined in the declaratory judgment action that it owes coverage under either or both of the aforesaid policies, it will forthwith pay the full liability limits of such policy or policies in settlement of the claims arising out of the aforesaid accident and injuries, and that it will make no effort to litigate the issue of fault or the amounts of coverage.

"4. Keith Marquis agrees that he will, prior to the filing of the declaratory judgment action, dismiss with prejudice the case of *Keith Marquis, as Conservator and Husband and in Such Capacities and on behalf of Barbi L. Marquis, and Keith Marquis, Individually, Plaintiffs, v. Jerry L. Auck and Sharon Auck, Defendants,* Case No. 94-C-5244, which is now pending in the District Court of Johnson County, Kansas.

"5. The undersigned hereby declare that the terms of the settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above men-

tioned , and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

According to the terms of the agreement, the plaintiffs dismissed their petition and filed a declaratory judgment action to determine whether there was coverage under either the homeowner's or contractor's policy. On September 13, 1995, State Farm filed a motion for summary judgment, claiming that under the plain language of both policies there was no coverage for the accident. On October 24, 1998, the plaintiffs filed a cross-motion for summary judgment. As part of their motion, the plaintiffs argued that coverage existed under the contractor's policy for the tort liability of Sharon Auck under the theory of negligent hiring, retention, or supervision of Jerry Auck. The plaintiffs argued that under the settlement agreement, as long as reasonable facts existed which would support their claim, State Farm was precluded from arguing that no negligent hiring, retention, or supervision had occurred.

At the hearing on the motions, State Farm argued that the plaintiffs could not make any claims against Sharon Auck for negligent hiring, retention, or supervision because such claims had not been included in the petition on which the settlement agreement had been based. According to State Farm, the settlement agreement excluded any claims other than those raised in the petition.

The trial court concluded that the homeowner's policy excluded liability and entered summary judgment in favor of State Farm on that policy. The plaintiffs did not appeal from this determination. However, the trial court determined that the contractor's policy did provide coverage for negligent hiring, retention, or supervision and that there was a question of fact as to whether Sharon Auck was negligent in her hiring or supervision of Jerry Auck. The court, therefore, permitted additional discovery on this issue.

On November 21, 1996, State Farm moved for reconsideration and filed a supplemental motion for summary judgment. State Farm requested that the trial court reconsider its determination that the plaintiffs could raise claims of negligent hiring, retention, or supervision. State Farm also asked in the alternative that the court enter judgment on its behalf because there was no factual

basis for the claims of negligent hiring, retention, or supervision. In support of this contention, State Farm included 153 additional statements of fact.

The plaintiffs responded and filed their own motion for reconsideration. They objected to State Farm's filing of a supplemental motion for summary judgment on the basis that the motion was out of time and not authorized by the court. The plaintiffs further asked the court to reconsider its determination that a factual question existed as to the claim of negligent hiring, retention, or supervision. They argued that once the court determined coverage was owed, State Farm was barred under the terms of the agreement from contesting whether such negligence had occurred.

Upon final consideration, the trial court changed its ruling on its earlier interpretation of the agreement. Leaving intact its ruling on the question of coverage, the court determined that the settlement agreement was unambiguous and provided that once a determination had been made that coverage was owed for claims of negligent hiring, retention, or supervision under the contractor's policy, State Farm was precluded from litigating the issue of fault. Accordingly, the court entered judgment for the plaintiffs in the amount of $1,000,000, with interest, against State Farm on its contractors policy.

State Farm contends on appeal that (1) the settlement agreement between the parties prohibits the plaintiffs from proceeding on the new theory of negligent hiring, retention, or supervision; (2) the contractor's policy excludes such claims because plaintiffs' injuries arise out of the use of a motor vehicle operated by an insured; (3) the plaintiffs' claims of negligent hiring, retention, or supervision are without factual basis; and (4) the tortfeasor was an employee acting within the scope of his employment, which precludes claims of negligent hiring, retention, or supervision.

## (1) The Agreement

State Farm contends that contrary to the trial court's determination, the settlement agreement bars the plaintiffs from raising new claims of negligent hiring, retention, or supervision. According to State Farm's interpretation, the settlement agreement limits

claims to those raised in the petition filed by the plaintiffs. More-over, State Farm argues that the statute of limitations and equitable considerations preclude new, further, and additional claims such as negligent hiring, retention, or supervision.

The interpretation of a written instrument is a question of law, and regardless of the construction given to a written instrument by the trial court, we may construe the instrument and determine its effect. See *Galindo v. City of Coffeyville*, 256 Kan. 455, 467, 885 P.2d 1246 (1994). The primary rule when interpreting a written contract such as the one in this case is to ascertain the intent of the parties. 256 Kan. at 467. As a general rule, if the language of the written instrument is clear, there is no room for rules of con-struction. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992). We first examine the settlement agreement as a whole to determine whether it permits the plaintiffs to maintain an action for negligent hiring, retention, or supervision. See *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 749, 822 P.2d 64 (1991) (holding that the meaning of a written agreement should always be ascertained by a consideration of all pertinent provisions and not by the critical analysis of a single or isolated provision). If we are unable to ascertain the parties' intent from such an exam-ination, we then must determine whether the agreement is ambig-uous.

A contract is ambiguous if it contains provisions or language of doubtful or conflicting meaning. In determining whether ambi-guity exists, the language of the contract is to receive a fair, rea-sonable, and practical construction. *Weber v. Tillman*, 259 Kan. 457, 476, 913 P.2d 84 (1996). A reasonable construction of the contract is one that makes the contract fair, customary, and such as prudent persons would intend. 259 Kan. at 476. Ambiguity does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more possible meanings is the proper meaning. 259 Kan. at 476.

According to paragraph 2 of the agreement, the plaintiffs and State Farm agreed to participate in a declaratory judgment action for a judicial determination of "whether or not State Farm Fire

and Casualty Company owes coverage for the aforesaid accident" under either its homeowner's or contractor's policies. Paragraph 3 provides that if it should be determined in the declaratory judgment action that State Farm owes coverage under either or both of the aforesaid policies, "it will forthwith pay the full liability limits of such policy or policies in settlement of the claims arising out of the aforesaid accident and injuries, and that it will make no effort to litigate the issue of fault or the amounts of coverage."

According to State Farm, paragraph 5 bars the plaintiffs' claims of negligent hiring, retention, or supervision. Paragraph 5 provides that the settlement was made for the purpose of "precluding forever any further or additional claims arising out of the aforesaid accident." State Farm argues that the new claims for negligent hiring, retention, or supervision are "additional claims," expressly precluded under the purpose of the agreement. However, the trial court determined that the contract was not ambiguous and that the claims of negligent hiring, retention, or supervision were not excluded. We agree.

The agreement itself essentially takes the facts out of the case. We have set forth the full text of the agreement in the statement of facts. Paragraph 1 settles the suit on file for the $100,000 coverage under the State Farm auto policy owned by Sharon Auck, except as to State Farm Fire and Casualty Company. Paragraph 2 simply states that the parties will participate in a declaratory judgment action to determine whether State Farm "owes coverage for the aforesaid accident under its Contractors policy." Paragraph 3 provides that if it is determined that coverage is owed, "it will forthwith pay the full liability limits of such policy or policies *in settlement of the claims arising out of the aforesaid accident* and injuries, and that it will make no effort to litigate the issue of fault or the amount of coverage." (Emphasis added.) Had the parties intended to limit exposure to claims originally filed in the petition, it seems clear to this court that such limitation would have been expressed.

Paragraph 5, relied upon by State Farm, fails to support its claim that there was an intent to limit claims to those set forth in the petition. The claims set forth in the petition were dismissed with

prejudice, and the parties were free to "determine whether claims were covered under the remaining policies." The plaintiff accepted the terms

"for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

This language, properly interpreted as a part of the whole agreement, makes it clear that plaintiffs are settling for all claims arising out of the accident, "disputed or otherwise," and not just those claims articulated in the petition filed. The agreement contemplates that the plaintiff may advance additional claims. Once the court determines whether coverage is owed, the cause is forever settled, "precluding forever any further or additional claims arising out of the aforesaid accident."

We agree with the trial court that the agreement is not ambiguous and that the plaintiffs are not precluded from raising claims of negligent hiring, retention, or supervision. The agreement provides that

"if it should be determined by the court that [State Farm] owes coverage under either or both of the aforesaid policies [homeowner's and contractor's], it will forthwith pay the full amount of the liability limits of said policy or policies in settlement *of the claims arising out of the aforesaid accident.*" (Emphasis added.)

Had the parties intended to limit claims to those raised in the petition filed, the agreement would have tied claims to those raised in the petition. Instead, after settling the claims raised by the petition, the parties refer thereafter to all claims arising out of the accident, which necessarily includes claims not raised in the petition filed. Absent an express limitation, "claims arising out of the . . . accident" covers the plaintiffs' claims of negligent hiring, retention, or supervision.

(2) Claims of Negligent Hiring, Retention, or Supervision.

State Farm contends that even if the settlement agreement does not bar the plaintiffs' claims for negligent hiring, retention, or supervision, such claims are excluded by the express terms of the contractor's insurance policy. State Farm argues that the contrac-

tor's policy specifically excludes coverage for bodily injury or property damage arising from the use or entrustment of an automobile.

Resolution of this issue necessarily involves the interpretation of an exclusion in the contractor's insurance policy issued by State Farm. Generally, exceptions, limitations, and exclusions to insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms. *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 695, 840 P.2d 456 (1992). If an insurer intends to restrict or limit coverage, it must use clear and unambiguous language in doing so, otherwise the insurance policy will be liberally construed in favor of the insured. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). The burden is on the insurer to prove facts which bring a case within the specified exception. *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 150, 519 P.2d 737 (1974).

By way of background, we look to the decision made by the trial court in this regard. The trial court was faced with determining whether either the homeowner's policy or the contractor's policy provided coverage for negligent hiring, retention, or supervision. In addressing this question, the trial court reviewed both policies and concluded that the contractor's policy did provide coverage.

The provisions of the homeowner's policy provided the following exclusions:

"Coverage L and Coverage M do not apply to:

. . . .

"e. Bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

. . . .

(2) a motor vehicle owned or operated by or rented or loaned to any insured; or

. . . .

"f. bodily injury or property damage arising out of:

    (1) the entrustment by any insured to any person;

    (2) the supervision by any insured of any person;

    (3) any liability statutorily imposed on any insured; or

    (4) any liability assumed through an unwritten or written agreement by an insured;

with regard to ownership, maintenance or use of any aircraft, watercraft, or motor vehicle (or any other motorized land conveyance) which is not covered under Section II of this policy."

The exclusion contained in the contractor's policy upon which State Farm relies provides under coverage L that the coverage does not apply

"7. to bodily injury or property damage arising out of the ownership, maintenance, use or entrustment of others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading."

After reviewing both policies, the trial court construed the exclusion under the homeowner's policy to bar coverage for negligent supervision, hiring, or retention. The language of the homeowner's policy so provides. However, in reviewing the policy provisions of the contractor's policy, the court found that the exclusion, unlike that contained in the homeowner's policy, fails to clearly and unambiguously exclude coverage for negligent supervision, hiring, or retention and, thus, such claims were covered.

State Farm, in its homeowner's policy, clearly and unambiguously excluded negligent supervision, hiring, or retention. State Farm did not clearly and unambiguously exclude negligent supervision, hiring, or retention in its contractor's policy. Nevertheless, State Farm argues that the general exclusion in a contractor's policy, covering the use or entrustment to others of an automobile owned or operated by any insured, excludes a claim for negligent supervision, hiring, or retention because the claims arose out of the use of an automobile owned by the insured.

In *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, we held that a homeowner's policy exclusion for bodily injury or property damage arising from the ownership, maintenance, operation, use, loading, and unloading of automobiles did not exclude coverage for the insured's liability for negligent entrustment of an automobile to another. "[E]ven though the immediate cause of the injury . . . was . . . operation of the automobile," the legal theory of liability, which was well recognized under Kansas law, was not excluded by the policy. 214 Kan. at 150. Thus, the rule taken

from *Upland* is that the theory of liability rather than the cause of the accident governs coverage. Where a policy seeks to exclude coverage for an accident arising out of the use of an automobile, coverage will still be found if the theory of liability establishes negligence independent of the use of the automobile, which negligence is covered under the policy.

Although *Upland* was a negligent entrustment case, its rule applies to claims based on negligent hiring, retention, or supervision. In this case, State Farm's contractor's policy excludes coverage for accidents arising from the use or negligent entrustment of an automobile, but does not exclude coverage for the negligent hiring, retention, or supervision of an employee. Under *Upland*, it makes no difference that the accident was causally related to the use of an automobile because the theory of liability is negligent hiring, retention, or supervision based on the independent negligence of Sharon Auck. *Upland* is the rule in Kansas.

The negligence alleged in this case is that of negligent supervision, hiring, or retention, which is negligence separate and distinct from negligence of the driver whose action caused the injury. Negligent supervision, hiring, or retention is a recognized cause of action under Kansas law; its focus is upon the actions of someone other than the person whose negligence caused the injury. In *Upland*, where the insured's liability was premised upon a legal theory separate and distinct from the liability excluded by the policy, the policy provided coverage for that claim. Thus, under *Upland*, we recognized that the policy provisions excluded coverage for negligent claims against the driver but it did not exclude coverage for the distinct and separate liability theory of negligent entrustment.

State Farm contends that our decision in *Upland* should be limited and has been limited by the Court of Appeals and federal district court in cases which were decided after *Upland*. See *U.S. Fidelity & Guar. Co. v. Heltsley*, 733 F. Supp. 1418 (D. Kan. 1990); *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370 (1989).

*Upland* is a minority rule in its recognition that policy provisions excluding coverage for the use of an automobile owned or operated by any insured do not necessarily exclude coverage for the distinct

and separate liability theory of negligent entrustment. Perhaps the case which best expresses the majority rule and reasoning, and one relied upon by State Farm, is *Oakley Transport v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 648 N.E.2d 1099 (1995). In *Oakley*, the court interpreted an exclusion similar to the one we now consider in this case. It noted that the employer's negligent supervision could not be divorced from its employee's negligent driving of the vehicle and, thus, coverage was excluded:

> "In legal terms, the negligent use of the vehicle, which is directly excluded under the policy [as it is in State Farm's contractor's policy] is the nexus between the supervisor and the supervisee. Because the claim for negligent supervision is not independent of, but inextricably intertwined with, the employee's use of the truck, any breach by the employer to supervise such use is necessarily deemed to have arisen therefrom. The majority of decisions from other jurisdictions which have considered the identical issues in factually analogous situations have likewise held that the 'auto' exclusion precludes coverage. [Citations omitted.] Accordingly, the claims of negligent supervision against Oakley are excluded from coverage under the 'auto' exclusion." 271 Ill. App. 3d at 727.

In arriving at its decision, the court distinguished between the various different policies and purpose:

> "Standard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks, including those involved in the ownership, maintenance, use or entrustment of an 'auto.' The premium charged by the CGL insurer reflects the underwriting objective of placing automobile accidents beyond the scope of coverage. These latter risks involve unique hazards to which the general business of the insured is not subject. For that reason, they are generally covered as a special class by an automobile liability policy or, as in this case, a trucker's liability policy." 271 Ill. App. 3d at 726.

See *Standard Mutual Ins. Co. v. Bailey*, 868 F.2d 893 (7th Cir. 1989), for a lengthy discussion of the rationale of the majority rule.

We acknowledge that Kansas remains in a minority position with reference to this exclusion. However, as late as 1992, this court had an opportunity to revisit *Upland* in *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689. We recognized again in *Catholic Diocese of Dodge City* that the coverage for parents' liability for negligent supervision of their child was sufficient to invoke coverage even though the intentional act of the child in causing damage to a

school was excluded from coverage. We held that even though the intentional acts exclusion would exclude coverage of the child's liability, the policy did not exclude coverage for the separate and distinct theory of negligent supervision liability of the parents. In affirming *Upland,* we held that unlike other states, "Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability." 251 Kan. at 697.

While the contractor's policy in this case specifically included negligent entrustment of an automobile, it did not exclude the "well recognized" theory of liability on which coverage is premised in this case. Kansas law recognizes negligent supervision as a separate and distinct theory in addition to theories of negligent hiring and negligent retention. *Anspach v. Tomkins Industries, Inc.,* 817 F. Supp. 1499, 1519-20 (D. Kan. 1993); *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.,* 249 Kan. 348, 819 P.2d 587 (1981). Negligent supervision includes not only the failure to supervise but also the failure to control persons with whom the defendant has a special relationship, including the defendant's employees or persons with dangerous propensities. See *Nero v. Kansas State University,* 253 Kan. 567, 861 P.2d 768 (1993); *J. W. v. State,* 253 Kan. 1, 853 P.2d 4 (1993).

The principle expressed in *Nero* applies with equal force in this case. Theories of negligent supervision or control and negligent hiring or negligent retention of employees are separate and distinct from theories of liability of negligent entrustment. Negligent entrustment occurs when an owner of an automobile allows a third party to drive it while knowing the driver to be incompetent, careless, or reckless. *McCart v. Muir,* 230 Kan. 618, Syl. ¶ 1, 641 P.2d 384 (1982).

At the time the insurance contract was entered into by the parties, the law of Kansas was clearly established. State Farm specifically excluded negligent supervision in its homeowner's policy but did not specifically exclude negligent supervision in the contractor's policy. We agree with the conclusion of the trial court that coverage was owed. This conclusion is supported by our decisions in *Upland* and *Catholic Diocese of Dodge City.*

### Statute of Limitations, Estoppel, and Laches

State Farm also argues that if neither the agreement or the policy is held to bar the plaintiffs' claim for negligent hiring, retention, or supervision, the claim should be barred by the statute of limitations. According to State Farm, since no claim was filed against Sharon Auck in the petition, and the 2-year statute of limitations found in K.S.A. 60-513 has expired, any claim for negligent hiring, retention, or supervision is barred.

The argument is without merit. Even though the plaintiffs' petition did not state a cause of action for negligent entrustment, Sharon Auck was a proper defendant on a respondeat superior theory. Amendments to the pleadings which would have related back to the date of the original pleading were available to the plaintiffs. See K.S.A. 60-215. More importantly, however, this matter is not a tort action but one sounding in contract based on the settlement agreement. The parties agreed to submit the issues to the district court for a decision on whether coverage existed. We have determined that the settlement agreement allowed the plaintiffs to assert claims of negligent hiring, retention, or supervision. The statute of limitations affirmative defense has been waived by the settlement agreement.

State Farm also contends that the plaintiffs' assertion of a claim for negligent hiring, retention, or supervision is barred by equity. State Farm argues that both laches and estoppel should operate to bar such an assertion. According to its argument, because the plaintiffs did not mention claims for negligent hiring, retention, or supervision, plaintiffs should not now be able to do so, as a matter of fairness. However, the question is not one of fairness but rather involves a question of law involving the interpretation of the agreement entered into by the parties. Under the contract agreement, the parties removed the facts from the case and agreed to pay in the event the court determined that coverage was owed under either policy. Estoppel, laches, or other equitable considerations are not involved.

### (3) Factual Basis for Claims of Negligent Hiring, Retention, or Supervision

State Farm argues that the plaintiffs' claims against Sharon Auck have no factual basis and, therefore, should not be allowed. The plaintiffs argue that their claims have a factual basis and, therefore, State Farm, under the terms of the agreement, is prohibited from contesting those claims.

As we previously stated, the effect of the settlement agreement between the parties was to remove the facts from contention. Thus, under the terms of the agreement, once the plaintiffs articulated a theory and alleged facts which, if true, would result in coverage under the contractor's policy, State Farm could not dispute those facts. We have examined the record and agree with the conclusion of the trial court that there exists a factual basis for the plaintiffs' claims of negligent hiring, retention, or supervision.

### (4) Respondeat Superior

The final argument made by State Farm is that the plaintiffs were barred from proceeding against Sharon Auck under the theory of negligent hiring, retention, or supervision because State Farm had already admitted that Jerry Auck was an employee acting within the scope of his employment and, therefore, the respondeat superior liability of Sharon Auck had already been established. In support of this position, State Farm cites a recent Missouri case, *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. 1995).

In *McHaffie*, the Missouri Supreme Court ruled that in an automobile accident it was improper to allow a plaintiff to proceed against the employer under the theory of negligent hiring where the employer had already admitted respondeat superior liability. 891 S.W.2d at 827. The court reasoned that negligent hiring is a form of imputed liability in that the employer cannot be made more liable than the employee for the damages which were the result of the employee's negligence. The court concluded that allowing a plaintiff to proceed on one theory where liability on the other had already been admitted wasted judicial resources, engendered confusion, and might allow the admissibility of potentially

inflammatory evidence which would be irrelevant to prove any contested issue. 891 S.W.2d at 826.

The rule in *McHaffie* that once an employer admits liability under respondeat superior the plaintiff may not proceed against the employer on a negligent entrustment or negligent hiring or supervision theory, is the majority rule. See *Cole v. Alton*, 567 F. Supp. 1084 (N.D. Miss. 1983); *Elrod v. G & R Const. Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982); *Armenta v. Churchill*, 42 Cal. 2d 448, 267 P.2d 303 (1954); *Clooney v. Geeting*, 352 So. 2d 1216 (Fla. Dist. App. 1977); *Willis v. Hill*, 116 Ga. App. 848, 159 S.E.2d 145 (1967), *rev'd on other grounds* 224 Ga. 263, 161 S.E.2d 281 (1968); *Wise v. Fiberglass Systems, Inc.*, 110 Idaho 740, 718 P.2d 1178 (1986); *Ledesma v. Cannonball, Inc.*, 182 Ill. App. 3d 718, 538 N.E.2d 655 (1989); *Houlihan v. McCall*, 197 Md. 130, 78 A.2d 661 (1951).

However, other jurisdictions, including Kansas, have found that an admission that the employee was acting within the scope of his or her employment does not preclude an action for both respondeat superior and negligent entrustment or negligent hiring, retention, or supervision. See *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. at 362 (holding that liability under a negligent hiring, retention, or supervision claim results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor); *Quinonez on behalf of Quinonez v. Anderson*, 144 Ariz. 193, 696 P.2d 1342 (1984); *Lim v. Interstate System Steel Div., Inc.*, 435 N.W.2d 830 (Minn. App. 1989); *Clark v. Stewart*, 126 Ohio St. 263, 185 N.E. 71 (1933). These cases rest on the proposition that negligent entrustment and negligent hiring, retention, or supervision are torts distinct from respondeat superior and that liability is not imputed but instead runs directly from the employer to the person injured. See *Lim v. Interstate System Steel Div., Inc.*, 435 N.W.2d at 832-33.

Because the torts of negligent hiring, retention, or supervision are recognized in Kansas as separate torts that are not derivative of the employee's negligence, an admission that the employee was acting within the scope of his or her employment does not preclude

an action for both respondeat superior and negligent entrustment or negligent hiring, retention, or supervision. See *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. at 362. State Farm's admission in this case that Jerry Auck was an employee acting within the scope of his employment at the time of the accident does not prohibit the plaintiffs from maintaining an action based on claims of negligent hiring, retention, or supervision.

Affirmed.

LARSON, J., concurring and dissenting: I concur with the majority opinion as to its construction of the settlement agreement and what is said in (1) The Agreement. I also agree with the majority opinion insofar as it relates to Statute of Limitations, Estoppel, and Laches, (3) Factual Basis for Claims of Negligent Hiring, Retention, or Supervision, and (4) Respondeat Superior.

I disagree with and respectfully dissent from the conclusion and result of that portion of the majority opinion entitled: (2) Claims of Negligent Hiring, Retention, or Supervision.

I recognize that the provisions of the exclusions in the contractor's policy and the homeowner's policy do not contain the identical language. Because of this different wording, the majority has relied on our long-time rules of construction that where an insurer desires to limit or restrict coverage, it must use clear and unambiguous language to do so. As such, it is a reasonable argument that when the insurer failed to utilize the same wording in its exclusion in the contractor's policy as it did in the homeowner's policy, it was bound by the difference of its draftsmanship. Additionally, the majority continues the "theory of liability" argument of *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), rather than looking to the facts underlying the cause of injury in determining liability under the contractor's policy.

I would not, however, decide this case so easily, for even if "hiring, retention, and supervision" had been included in the contractor's general liability exclusions, inventive counsel would then claim other failures of employer responsibility in an attempt to continue the *Upland* holding, allowing the legal theory of liability which has

been alleged, rather than the factual cause of the injury, to govern the issue of whether coverage exists in Kansas. See *Upland*, 214 Kan. 145.

When this court decided *Upland* 24 years ago, there was support around the United States for the result we reached. We cited cases from New Jersey, New York, Minnesota, and Michigan that reached the same result, while we distinguished a case from Connecticut and those that relied on it on the ground that they were not negligent entrustment cases, but respondeat superior cases in which the negligence of the owner depended directly on the negligence of the driver. See 214 Kan. at 150-51.

While *Upland* may be the Kansas rule, there is considerable question that it should continue to be followed. When it was decided we relied on *Shelby Ins. Co. v. U.S. Fire Ins.*, 12 Mich. App. 145, 162 N.W.2d 676 (1968); *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); *McDonald v. Home Ins. Co.*, 97 N.J. Super. 501, 235 A.2d 480 (1967); and *Lalomia v. Bankers & Shippers Insurance Company*, 35 App. Div. 2d 114, 312 N.Y.S.2d 1018 (1970). Since this court's opinion, these cases have not fared well. *McDonald* has been distinguished almost out of existence by *Williamson v. Continental Cas. Co.*, 201 N.J. Super. 95, 492 A.2d 1028 (1985) (holding *McDonald* applicable only where persons sued were not owners of car or insured under policy). New York courts have limited *Lalomia* to those cases involving homeowner's insurance. See *Monarch Ins. Co. v. Hetherly*, 148 Misc. 2d 594, 597-99, 560 N.Y.S.2d 745 (1991), *aff'd* 182 App. Div. 2d 1138, 586 N.Y.S.2d 764 (1992). Similarly, *Republic Vanguard* has been distinguished on the language of the exclusion used in that case and held not to apply where the exclusion was for accidents "arising from the use of a motor vehicle." See *Faber v. Roelofs*, 311 Minn. 428, 435, 250 N.W.2d 817 (1977). Even *Shelby Ins. Co.* has been distinguished on the grounds that it was never really a negligent entrustment case, and Michigan now follows the rule that the actual cause of accident rather than the theory of liability governs coverage. See *Mich. Mut. Ins. Co. v. Sunstrum*, 111 Mich. App. 98, 102-05, 315 N.W.2d 154 (1981).

Also, since our decision in *Upland*, the overwhelming majority of other jurisdictions have held that the negligent entrustment of an automobile which results in an accident falls under an insurance policy exclusion for accidents arising out of the use of an automobile. See *Cooter v. State Farm Fire & Cas. Co.*, 344 So. 2d 496 (Ala. 1977); *Lumbermens Mut. Cas. Co. v. Kosies*, 124 Ariz. 136, 602 P.2d 517 (1979); *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 190 Cal. Rptr. 425 (1983); *Northern Ins. Co. of New York v. Ekstrom*, 784 P.2d 320 (Colo. 1989); *Gargano v. Liberty Mut. Ins. Co.*, 384 So. 2d 220 (Fla. Dist. App. 1980); *Pedersen v. Republic Ins. Co.*, 72 Md. App. 661, 532 A.2d 183 (1987); *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978); *Shelter Mut. Ins. Co. v. Politte*, 663 S.W.2d 777 (Mo. App. 1983); *Pulleyn v. Cavalier Ins. Corp.*, 351 Pa. Super. 347, 505 A.2d 1016 (1986); *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787 (Tex. 1982); *Mutual Service Cas. Ins. Co. v. Koenigs*, 110 Wis. 2d 522, 329 N.W.2d 157 (1983).

Similarly, the majority of those courts which have addressed the question of whether a claim of negligent hiring, retention, and supervision fits within the policy exclusions where the accident complained of is an automobile accident, as is the fact situation in the case at hand, have found that the policy exclusion applies. See *Alfa Mut. Ins. Co. v. Jones*, 555 So. 2d 77 (Ala. 1989); *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360 (Alaska 1997); *National American Ins. Co. v. Coburn*, 209 Cal. App. 3d 914, 257 Cal. Rptr. 591 (1989); *Cesarini v. American Druggist Ins. Co.*, 463 So. 2d 451 (Fla. Dist. App. 1985); *Allstate Ins. Co. v. Pruitt*, 177 Ill. App. 3d 407, 532 N.E.2d 401 (1988); *Mahlum v. Baker*, 639 So. 2d 820 (La. App. 1994); *American Universal Ins. Co. v. Cummings*, 475 A.2d 1136 (Me. 1984); *Northern Assurance Co. v. EDP Floors*, 311 Md. 217, 533 A.2d 682 (1987); *Gorzen v. Westfield Ins. Co.*, 207 Mich. App. 575, 526 N.W.2d 43 (1994); *Citizens Sec. Mut. Ins. v. Levinson*, 445 N.W. 2d 585 (Minn. App. 1989); *Cameron Sod Farms v. Continental Ins. Co.*, 700 A.2d 290 (N.H. 1997); *Daus v. Marble*, 270 N.J. Super. 241, 636 A.2d 1091 (1994); *Phillips v. Estate of Greenfield*, 859 P.2d 1101 (Okla. 1993); *Farmers Insurance Group v. Nelsen*, 78 Or. App. 213, 715 P.2d 492 (1986); *Great Central*

*Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D. 1980); *Taylor v. American Fire and Cas. Co.*, 925 P.2d 1279 (Utah App. 1996); *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 329 N.W.2d 150 (1983). The theory of these cases, as stated in *American Universal Ins. Co. v. Cummings*, is that the motor vehicle exclusion is "not based upon the theory of liability inherent in a claim. Rather, the policy is said to not apply to any claim regardless of the theory of liability when that claim is for bodily injury arising out of operation of any motor vehicle owned by the insured". 475 A.2d at 1137-38.

In only two cases involving automobile accidents have courts found that an exclusion such as the one at issue does not apply to claims of negligent hiring, retention, or supervision. In *Smith v. USAA Cas. Ins. Co.*, 532 So. 2d 1171, 1174 (La. App. 1988), the Louisiana Court of Appeals found that a policy exclusion for the operation of a vehicle is not applicable where the asserted negligence or cause in fact of the injuries is independent of the vehicle's operation. The court noted that Louisiana law applies coverage where the insured's act is a result of negligence independent of the use of the vehicle, even though such use may be concurrent with the use of the vehicle. 532 So. 2d at 1174. *Smith*, therefore, used an analysis consistent with the one this court employed in *Upland*, which focuses on the theory of liability rather than the actual cause of the accident.

Even the precedential value of *Smith* is in doubt. A separate circuit of the Louisiana Court of Appeals expressly declined to follow *Smith* in *Mahlum v. Baker*, 639 So. 2d 820. The court in *Mahlum* stated that in order to determine coverage under an automobile use exception, the two questions that must be answered are: whether the conduct of the insured of which the plaintiff complains was a legal cause of the injury; and whether it was a use of an automobile. 639 So. 2d at 824. Thus, in a case like *Upland*, that circuit of the Louisiana Court of Appeals would apply an analysis which looked at the conduct complained of, *i.e.*, the negligent entrustment of an automobile, and hold that it constituted a use of an automobile and was therefore excluded from coverage.

The second case, *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 241, 496 N.E.2d 158 (1986), is somewhat unusual. In *Worcester*, the plaintiff was injured in a car accident caused by the minor son of the insured, who had become intoxicated at a party given at the insured's home. The plaintiff sued on a negligent supervision theory.

The *Worcester* case is unusual because Massachusetts is one of the jurisdictions which has held that a policy exclusion such as the one at issue applies where the claim is one for negligent entrustment. See *Barnstable County Mutual Fire Ins. Co. v. Lally*, 374 Mass. at 606. Nevertheless, the court in *Worcester* found that the policy exclusion did not apply to the claim for negligent supervision *under the unique facts of the case*. The court found that the negligent supervision of the insured's son allowed him to become intoxicated and that this intoxication was independent of his use of the vehicle and was therefore not subject to the exception in the policy. As a result, the court found coverage. 398 Mass. at 245-46.

Of these two cases, only *Smith* seems to support the application of our holding in *Upland*. While *Worcester* does focus somewhat on the independent nature of the theory of negligent supervision, it appears to be more a results oriented attempt to find coverage and is questionable in light of other Massachusetts case law.

As can be seen by the above cases, Kansas appears to be completely out of step with all the holdings around the United States with regard to our interpretation of these provisions. The overwhelming majority of states, in determining coverage, look to the underlying cause of the injury rather than the specific theory of liability alleged. The majority viewpoint presents a compelling argument. An insurer contracts with an insured regarding the particular risks it will undertake and the risks it will not assume. To allow an insured to avoid a clear exclusion merely by pleading a theory of liability which is not exempted serves to provide the insured with coverage beyond the policy terms bargained for and agreed upon between the insurer and insured. See *Taylor v. American Fire and Cas. Co.*, 925 P.2d at 1284.

Our holding in *Upland* is not only contrary to the almost unanimous weight of authority in other jurisdictions, but has also been

to some extent disregarded by our own Court of Appeals. See *United Services Auto Ass'n v. Morgan*, 23 Kan. App. 2d 987, 939 P.2d 959 (1997) (intentional act of insured causally connected to use of car, automobile exclusion of homeowner's policy applies, *Upland* not mentioned); *Newton v. Nicholas*, 20 Kan. App. 2d 335, 887 P.2d 1158 (1995) (*Upland* not mentioned, negligent acts were failure to inspect and secure a water tank on a truck, directly connected to use, no coverage); *Farmers Ins. Co. v. Rosen*, 17 Kan. App. 2d 468, 839 P.2d 71 (1992) (negligent instruction claimed, *Upland* distinguished, theory of liability test ignored, no coverage found).

The *Upland* test and theory has not survived the logic and judgment of other states. It is an unsupportable minority. It needs to be abandoned. It is also confusing and allows coverage beyond that anticipated in the policy. Nevertheless, it was unfortunately reaffirmed in this court as recently as 1992. See *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 697, 840 P.2d 456 (1992) (citing *Upland* for the proposition that "[u]nlike Michigan, Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability alleged").

The time has come for Kansas to join the majority of jurisdictions. I would hold the factual cause of the injury governs the construction of the exclusion language. We should not hold that coverage exists under the contractor's general liability policy.

We might also look at the "entrustment" of the use of a motor vehicle as including the underlying hiring, training, retention, supervision or other inventive theory of liability (without limitation) charged to an employer. All of these actions are merged into and become a part of the entrustment of the motor vehicle to the driver who may ultimately negligently cause an accident which results in damages. This is exactly what logic tells us was clearly intended by the exclusion in the contractor's general liability policy. There is not coverage under the facts of this case under the contractor's general liability policy.

McFarland, C.J., and Six, J., join in the foregoing concurring and dissenting opinion.