883 So.2d 10 (2004)
Daniel MEYERS
v.
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION.
No. 2002-CA-00362-SCT.
Supreme Court of Mississippi.
June 19, 2003.
Rehearing Denied October 14, 2004.
*11 Andre Francis Ducote, Wayne E. Ferrell, Jr., Jackson, attorneys for appellant.
Lawrence Cary Gunn, Jr., Hattiesburg, attorney for appellee.
EN BANC.
GRAVES, Justice, for the Court.
¶ 1. This appeal arises from the Circuit Court of Jackson County, Mississippi. Summary judgment was granted in favor of Mississippi Insurance Guaranty Association, against Daniel Meyers, regarding the applicability of general commercial liability coverage for injuries sustained in an automobile accident. Coverage for bodily injury sustained from the use of an automobile is excluded under the policy. Meyers pleaded various theories of negligence preceding the accident as proximately causing his injuries and damages, and argues that the automobile use exclusion does not apply to bar coverage under those theories.

FACTS
¶ 2. This action arises from an automobile accident. On January 10, 1995, Daniel Meyers, a twenty-three year old certified public accountant, was rendered a quadriplegic as a result of a collision with a tractor-trailer truck on Highway 63 in Jackson County, Mississippi. As was admitted during the course of litigation, the driver of the tractor-trailer truck improperly turned into Meyers's lane of traffic, thus, causing the collision.
¶ 3. The truck was driven by Alvin Clifton (Driver), owned by Brandi and Suzette Trucking Company (B & S), and operated by Odyssey Services of Mississippi, Inc. (Odyssey) which hired drivers for and managed B & S's trucking operations. The driver therefore was an Odyssey employee.
¶ 4. Meyers filed a negligence action against B & S and the driver to recover damages resulting from Meyers's injuries. Through discovery, Meyers learned that Odyssey hired the driver in violation of its hiring standards. Meyers filed an amended complaint against Odyssey alleging negligent management; failure to have in place a safety program; failure to provide or adequately provide safety training to employees; failure to have adequate hiring procedures and guidelines; and failure to follow and enforce the hiring procedures and guidelines that were in place, all of which were alleged to have contributed to the proximate cause of Meyers's injuries.
¶ 5. B & S and Odyssey each had an automobile liability policy and a general commercial liability (GCL) policy covering liabilities for matters other than automobile accidents.[1] B & S had its auto policy through Canal Insurance Company (Canal), with a $1 million policy limit, and a $1 million GCL policy with Aetna. Odyssey had its auto policy with Farmer's Insurance Exchange (Farmers), with a $500,000 liability limit per person, and a $1 million GCL policy with Credit General Insurance Company (Credit General).
¶ 6. After the suit was filed, Odyssey put its insurance carriers on notice and demanded a defense and indemnity of Meyers's *12 claims. Both B & S and Odyssey were defended by their respective auto liability carriers, Canal and Farmers; but Aetna and Credit General, the respective GCL carriers took no action.
¶ 7. B & S and Odyssey entered into agreed judgments whereby their liability for Meyers's injuries and damages (including the negligent management of the trucking business) was stipulated and wherein there was a finding and order of the court adjudicating that B & S and Odyssey were negligent for hiring an employee who did not qualify for employment with B & S and Odyssey, and whose negligence therefore was a contributing cause of the accident and Meyers's injuries and damages. B & S and Odyssey assigned all claims that they may have had against each other and their respective insurers, including Credit General and Aetna, arising from the subject accident, to Meyers.
¶ 8. B & S's auto liability insurer, Canal, settled with Meyers and paid its $1 million policy limit. B & S and Meyers then entered into an agreed judgment for $ 20.5 million, in exchange for Meyers's covenant not to sue B & S for the balance but to seek recovery from Aetna, its GCL carrier, instead. Odyssey's auto liability carrier, Farmers, also paid its policy limits of $500,000; and Odyssey and Meyers also consented to an agreed judgment for $20.5 million in exchange for Meyers's covenant not to sue Odyssey for the balance but to seek recovery from its GCL carrier, Credit General.
¶ 9. Meyers sued Aetna, B & S's GCL, attempting to recover on the balance of the agreed judgment. Aetna removed to federal court, wherein summary judgment was granted in its favor, the court found that the plain language of the GCL policy's auto exclusion precluded any coverage for the automobile accident.
¶ 10. On April 4, 2000, Meyers filed his third amended complaint alleging claims against B & S for indemnity which were assigned to him by Odyssey; claims against Odyssey for indemnity which were assigned to him by B & S; and claims against Credit General for indemnity and bad faith, which were also assigned to him by B & S and Odyssey.
¶ 11. After the third amended complaint was filed, Credit General became insolvent. Pursuant to its statutory authority under Miss.Code Ann. § 83-11-101 et seq., the Mississippi Insurance Guaranty Association (MIGA) stepped into Credit General's shoes to the extent of covered claims.
¶ 12. MIGA then moved for summary judgment contending that the allegations of the underlying suit did not implicate any coverage under the applicable Credit General policy due to its auto-exclusion clause. MIGA also contended that it could not be liable for the underlying judgment since Odyssey's "personal liability is a condition precedent to coverage," and the Covenant Not to Execute entered into between Meyers and Odyssey erased any personal liability that Odyssey may have had. See Jones v. S. Marine & Aviation Underwriters, Inc., 888 F.2d 358, 361 (5th Cir.1989).
¶ 13. Meyers responded to MIGA's motion arguing that pursuant to the rule of complaint, coverage of Meyers's claims under the policy in question must be determined upon the allegations in the complaint. Am. States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551 (5th Cir.1998). Those specific allegations are that B & S proximately caused Meyers's injuries by failing to:
(1) have in place adequate procedures for hiring qualified truck drivers;
(2) properly qualify truck driver applicants;

*13 (3) assess and examine the level of knowledge of truck driver applicants;
(4) increase the level of knowledge of employees employed as truck drivers;
(5) observe, evaluate and critique truck drivers on a continuing basis;
(6) hire new truck drivers in accordance with established written requirements;
(7) have an adequate training program;
(8) adequately and professionally monitor their drivers' development activities;
(9) have an adequate safety program in place
(10) operate their trucks in a non-overloaded condition; and
(11) non-negligently perform gratuitous duties.
¶ 14. Meyers argued that since the second and third amended complaints alleged that B & S negligently managed and operated its business causing injury to Meyers, coverage for these claims should be expressly found or construed under the GCL policy; and MIGA is therefore not entitled to judgment as a matter of law.
¶ 15. The trial court granted summary judgment for MIGA, finding, as a matter of law, that no coverage existed under the GCL policy due to its auto-exclusion clause. The trial court then declined to address the "condition precedent" issue, finding it moot due to summary judgment. Meyers appealed, asserting that summary judgment for MIGA was improper.
¶ 16. Specifically, the issues before this Court are whether the auto-exclusion contained in the GCL policy excluded coverage of Meyers's claims of negligent management and negligent hiring; and if so, whether the GCL carrier, Credit General/MIGA, was obligated to defend and indemnify Odyssey against B & S contractual claims of indemnity which were assigned to Meyers; and whether General Credit/MIGA engaged in bad faith for failure to defend and indemnify Odyssey and refusing to pay Meyers's claims.

STANDARD OF REVIEW
¶ 17. It is well-settled that the construction and application of insurance contract provisions present questions of law which this Court reviews de novo. Radmann v. Truck Ins. Exchange, 660 So.2d 975, 977 (Miss.1995). Equally well-settled is that this Court reviews summary judgment rulings de novo. Miller v. Meeks, 762 So.2d 302, 304 (Miss.2000).
¶ 18. A summary judgment motion is properly granted when no genuine issues of material fact exist; and the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c); Miller, 762 So.2d at 304. The moving party has the burden of demonstrating that no genuine issues of material fact exist and the court must review all evidentiary matters before it in the light most favorable to the non-moving party. Id. "An issue of fact may be present where there is more than one reasonable interpretation of undisputed testimony, where materially different but reasonable inferences may be drawn from uncontradicted evidentiary facts, or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed. Id. at 305 (citing Dennis v. Searle, 457 So.2d 941, 944 (Miss.1984)),

ANALYSIS

a. Does a GCL policy exclusion for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any ... auto" bar recovery where negligence prior to the accident is alleged as proximately causing the accident and resulting injury?
¶ 19. The present GCL policy provides coverage for bodily injury damages *14 but excludes such coverage for damages arising out of the use of an automobile. Meyers contends that the theories of liability asserted, negligent hiring and failure to maintain adequate safety programs allow recovery under the GCL for auto accident injuries despite this auto-exclusion. The exclusion specifically provides:
This insurance does not apply to `bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or water craft, owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.
The policy defines an automobile as any "land motor vehicle, trailer or semi-trailer for travel on public roads." There is no question that the tractor-trailer truck involved in the present case is an automobile. There is also no question that Meyers would not have been injured but for the collision between the truck and his vehicle.
¶ 20. Coverage under a GCL policy with an auto-exclusion for injuries arising out of the use of an automobile "should not vary depending upon the theories of liability asserted." Titan Indem. Co. v. Estes, 825 So.2d 651, 656 (Miss.2002). In Titan, firefighters were in route to a house fire. The fire engine, being driven by the Company Captain, collided with a car in an intersection killing both of the car's passengers. Immediately preceding the collision, the Captain was twice warned by a fellow firefighter riding shotgun that the car was approaching and that the Captain needed to stop. He failed to stop, however, until it was too late. A blood test performed on the Captain indicated the presence of drugs and alcohol. Plaintiffs sought coverage in a wrongful death action under the city's GCL policy, which as in the present case, contained an auto exclusion barring coverage for bodily injury resulting from the entrustment, maintenance, or use of an automobile. Plaintiffs argued they had asserted other proximate causes which were not excluded, particularly, failure to train and negligent breach of duty to prevent the Captain from operating the fire-engine under the influence of drugs and alcohol. Plaintiffs argued that those causes were not so intertwined with the use or maintenance of the fire truck to fall within the auto exclusion.
¶ 21. This Court reasoned that the family in Titan "would not have been damaged but for the collision between the fire engine and [the car] ... Therefore, given the clear and unambiguous language of the auto exclusion, the Court finds that the auto exclusion forecloses coverage under the policy." Id.
¶ 22. Warren ex rel. Warren v. United States Fidelity & Guaranty Co., 797 So.2d 1043 (Miss.Ct.App.2001), held that under a homeowner's policy with a similar auto exclusion, no coverage existed for injuries resulting from an auto accident, even though the plaintiff alleged "negligent entrustment" of the automobile and "negligent supervision" of its unlicensed driver.[2] *15 The auto exclusion in Warren provided as follows:
Personal Liability and Coverage and Medical Payments to Others do not apply to "bodily injury" or "property damage ..."
Arising out of:
(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";
(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.
¶ 23. The plaintiff contended that the theories of liability asserted, negligent entrustment and negligent supervision, allowed recovery despite the auto exclusion. The court reiterated, however, that "[t]he USF & G policy excludes personal injuries `arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto,' snowmobile or trailer design for use therewith, or water craft owned or operated by, or rented, leased or loaned to any insured." Id. The Warren court stated that "asserting a different theory of liability, e.g., negligent supervision, strains the clear language of the exclusion;" it would not therefore construe the policy in a "convoluted manner." Id.
¶ 24. Additionally, MIGA cites Love ex rel. Smith v. McDonough, 758 F.Supp. 397 (S.D.Miss.), aff'd mem. 947 F.2d 1486 (5th Cir.1991), in which the district court ruled that the insured's daughter, who was an insured under the policy in question, was "using" the motor vehicle at the time of the collision for purposes of the automobile exclusion from the homeowner's policy and that the policy did not provide coverage for claims based on negligent entrustment, negligent supervision, and statutory liability of the insured. Id. The policy in Love excluded liability coverage for "bodily injury or property damage ... arising out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle owned or operated by, or rented or loaned to any insured. 758 F.Supp. at 399.
¶ 25. The Love court's framing of the issue is worthy of repeating here:
There is one salient question that is the key to determining whether coverage [for negligent supervision] is provided by policies using exclusions worded as the one before the Court. Did the plaintiff's injuries arise out of the use or ownership of an automobile by an insured? If they did, then there is no coverage under the policy. The Supreme Court of Mississippi has made its position clear that it will not recognize "strained interpretations" of policies in order to create otherwise nonexistent coverage.
Id. at 402. The Love court adopted the rationale of numerous other courts which view negligent entrustment and negligent supervision as synonymous terms when interpreting similar policy exclusions. Id. The Love court reasoned that "These courts recognize that `the exclusion applies to a specific instrumentality, namely an automobile, rather than a theory of recovery.'" Id. (citing N. Ins. Co. of New York *16 v. Ekstrom, 784 P.2d 320 (Colo.1989)). The Love court concluded that "[a]sserting a different theory of liability to perform an end-run around the exclusion strains the clear and unambiguous language of the provision out of all bounds, and this the court refuses to do. Application of the exclusion is not dependent on the theory of liability asserted." Love, 758 F.Supp. at 402.
¶ 26. The controlling case law in Mississippi is clear: claims of negligent entrustment, negligent supervision, and failure to train will not be recognized as independent acts of negligence sufficient to allow coverage under insurance policies, whether homeowners or GCL policies, with an auto-exclusion where the damages arise out of the use of an automobile. More broadly, application of the exclusion is not dependent on the theory of liability asserted. Id.; Titan, 825 So.2d at 656 ¶ 27.
¶ 27. Meyers first asserts that the applicable case law is distinguishable from the present on the basis of policy types. We find that Meyers's attempted distinction between policies is without merit. While Love and Warren involved homeowners policies with an auto-exclusion, Titan involved a GCL policy with an auto exclusion, as in the present case. Moreover, if any distinction could be made, the controlling factor is not the type of policy, but the autoexclusion in the policy, which in both the authoritative cases and the present case are substantively identical.
¶ 28. A majority of those courts which have addressed the question of whether a claim of negligent hiring, retention, and supervision fits within the policy exclusions where the accident complained of is an automobile accident, have found that the policy exclusion applies to bar coverage. Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 961 P.2d 1213, 1226 (1998) (Larson, J., concurring & dissenting) (citing Alfa Mut. Ins. Co. v. Jones, 555 So.2d 77 (Ala.1989); Jones v. Horace Mann Ins. Co., 937 P.2d 1360 (Alaska 1997); Nat'l Am. Ins. Co. v. Coburn, 209 Cal.App.3d 914, 257 Cal.Rptr. 591 (1989); Cesarini v. Am. Druggist Ins. Co., 463 So.2d 451 (Fla.Dist.Ct.App.1985); Allstate Ins. Co. v. Pruitt, 177 Ill.App.3d 407, 126 Ill.Dec. 716, 532 N.E.2d 401 (1988); Mahlum v. Baker, 639 So.2d 820 (La.Ct.App.1994); Am. Universal Ins. Co. v. Cummings, 475 A.2d 1136 (Me.1984); N. Assur. Co. v. EDP Floors Inc., 311 Md. 217, 533 A.2d 682 (1987); Gorzen v. Westfield Ins. Co., 207 Mich.App. 575, 526 N.W.2d 43 (1994); Citizens Sec. Mut. Ins. v. Levinson, 445 N.W.2d 585 (Minn.Ct.App.1989); A.J. Cameron Sod Farms, Inc. v. Cont'l Ins. Co., 142 N.H. 275, 700 A.2d 290 (1997); Daus v. Marble, 270 N.J.Super. 241, 636 A.2d 1091 (1994); Phillips v. Estate of Greenfield, 859 P.2d 1101 (Okla.1993); Farmers Ins. Group v. Nelsen, 78 Or.App. 213, 715 P.2d 492 (1986); Great Cent. Ins. Co. v. Roemmich, 291 N.W.2d 772 (S.D.1980); Taylor v. Am. Fire & Cas. Co., 925 P.2d 1279 (Utah Ct.App.1996); Bankert ex rel. Habush v. Threshermen's Mut. Ins. Co., 110 Wis.2d 469, 329 N.W.2d 150 (1983)). As Justice Larson of the Kansas Supreme Court has pointed out, "[t]he theory of these cases, as stated in American Universal Ins. Co. v. Cummings, is that the motor vehicle exclusion is `not based upon the theory of liability inherent in a claim. Rather, the policy is said to not apply to any claim regardless of the theory of liability when that claim is for bodily injury arising out of operation of any motor vehicle owned by the insured." Marquis, 961 P.2d at 1226 (Larson, J., concurring & dissenting).
¶ 29. We find particularly instructive Travelers Indemnity Co. v. Citgo Petroleum Corp., 166 F.3d 761 (5th Cir.1999), in which the Fifth Circuit held that, under *17 Texas law, a claim against a petroleum franchiser for negligently overseeing the franchisee's drivers, one of whom was involved in a fatal auto accident on the job thus resulting in the suit, was subject to the auto-exclusion, even though the franchiser did not own or operate franchisee's truck involved in the accident. The amended complaint accused the franchiser of (1) improperly checking on the qualifications of the franchisee's drivers, (2) not enforcing the same safety standards on those drivers that it applied to its own fleets when it handled delivery to franchisees and (3) continuing to deliver petroleum and allowing the franchisee access to its facilities although knowing its drivers were incompetent. The court found that the franchiser's alleged negligence was not a cause independent of the franchisee's negligence since no lawsuit would have arisen without the driver's negligence.
¶ 30. The Travelers court stated that the underlying complaint did not allege "some kind of abstract psychic harm traceable to the franchiser's failure to follow statutory and company policies in those respects; it argued that the failure was a cause of the truck's being improperly operated by the driver and thus, a cause of the accident and resultant injury." Id. at 770-71. The court reasoned that the "fact that the alleged wrongs with which the plaintiff's pleadings charged the franchiser do not directly include its ownership, maintenance, use, or entrustment of the truck does not mean that the damages sought by those pleadings do not arise out of the Franchisee's ownership, use, maintenance, or entrustment of the truck." Id.
¶ 31. In the present case, although Meyers did not plead negligent entrustment or supervision, the injury for which damages are sought arose out of and would not have occurred but for the use of the truck. We find this is the essence of what Titan stands for.
¶ 32. The present policy clearly applies to bodily injury claims,[3] but not to claims relating to the use of an automobile alleged as causing the bodily injury.

CONCLUSION
¶ 33. This Court is acutely aware of the grave injuries which Meyers must endure for the remainder of his life, and the fact that the insurance policies in this case were
inadequate to compensate him. Unfortunately, the law does not allow any compensation under the GCL policy. We conclude that under Titan, Love, and Warren, Meyers is unable to recover for his injury under the GCL policy since (1) his damages would not have arisen but for the auto accident, and (2) the GCL policy clearly excludes coverage for injury arising from an automobile accident.
¶ 34. The trial judge did not err in granting summary judgment for MIGA. MIGA, standing in the shoes of the GCL carrier, has no duty to pay the judgment, or otherwise defend or indemnify in this case due to the auto-exclusion. Given this conclusion, we do not address Meyers's *18 remaining issues regarding indemnification and bad faith.
¶ 35. The judgment of the trial court is affirmed.
¶ 36. AFFIRMED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.
McRAE, Presiding Justice, Dissenting.
¶ 37. Public policy demands that we not allow exclusions that of coverage for acts independent of the insured's driving a vehicle. The theory of liability asserted should govern whether coverage exists in this case. Where an insurance policy seeks to exclude coverage for an accident arising out of the use of an automobile, coverage should still be found if the theory of liability would establish negligence independent of the use of the automobile, which negligence is clearly covered under the present policy. Meyers's proof of independent acts of negligence as the cause in fact of the injury should be tried before a jury. Accordingly, I dissent.
¶ 38. In this case, Meyers has alleged that B & S engaged in numerous acts of negligence contributing to and resulting in the accident.[4] These allegations of negligence are separate and distinct from the auto use itself and are not excluded by the policy language. It makes no difference that the accident was causally related to the use of an automobile because the theory of liability is the independent negligence of the owner and operating company.
¶ 39. This Court's holding in Titan Indemnity Co. v. Estes, that coverage under a GCL with an auto-exclusion "should not vary depending upon the theories of liability asserted." is too broad. 825 So.2d 651 (Miss.2002) This holding arose exclusively from allegations of negligent entrustment and failure to train. The present allegations are different than those in Titan. Nonetheless, Titan captures any act of negligence contributing to injuries and damages resulting from the use of an automobile, even though the cause in fact, which is a question for the jury, could indeed be negligent training, or a failure to train, or negligence in hiring, failure to maintain adequate safety programs, or any other legally recognized act of negligence. The problem arises when insurance companies violate public policy and exclude coverage when you have negligent entrustment of parental contraction to be responsible for minors fifteen to seventeen years of age or agency and principal relationship. These are all independent acts done prior to the use of a vehicle but are all synonymous with the vehicle. These theories and acts are excluded under the automobile policy and should be covered either under the automobile policy or under a general commercial liability policy. Public policy *19 demands that these types of exclusions should be voided.
¶ 40. Contrary to Titan, other jurisdictions have held that a policy exclusion for the operation of a vehicle is not applicable where the asserted negligence or cause in fact of the injuries is independent of the vehicle's operation. The focus is on the theory of liability rather than the actual cause of the accident. See, e.g., Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 961 P.2d 1213 (1998) (holding that claims of negligent hiring, retention, or supervision did not preclude recovery for injuries sustained in an auto accident under an auto exclusion clause since those theories established negligence independent of the use of the automobile); Smith v. USAA Cas. Ins. Co., 532 So.2d 1171, 1174 (La.Ct.App.1988) (holding that Louisiana law provides coverage where the insured's act is a result of negligence independent of the use of the vehicle, even though such use may be concurrent with the use of the vehicle); Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 496 N.E.2d 158 (1986) (holding that claims of negligent entrustment and supervision did not preclude recovery for injuries sustained in an automobile accident under an auto exclusion clause since, in this case, the negligent supervision of the insured's son allowed him to become intoxicated and that this intoxication was independent of his use of the vehicle).
¶ 41. In LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978), for example, an individual was killed in an auto accident involving a funeral hearse in which he was riding as a passenger. A sheriff's deputy was leading the funeral procession at the time through a highway intersection The hearse failed to stop at a flashing light and collided with another car. The deputy, however, did not secure the intersection as he was required to do in order that the procession could safely cross. The sheriff's office and its general professional liability insurer were sued. The policy in that case had the same auto exclusion as in the present case. But the Louisiana Supreme Court held that "the deputy's negligence was a cause-in-fact of the accident and that the exclusionary provisions were inapplicable." Id. at 479. The court stated:
"An exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage, if more than one interpretation is possible. Consonant with this principle, the decisions we could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with his use of an automobile."
Id. at 479 (citations omitted). Equally commanding is the reasoning of Centermark Properties, Inc. v. Home Indemnity Co., 897 S.W.2d 98 (Mo.Ct.App.1995), in which the court found that the auto exclusion did not apply to negligent supervision, hiring, and training. The court reasoned that one proximate cause may have been the automobile use, a concurrent cause may have been negligence in supervising and training employees. The court found that the insurance company was obligated to defend and indemnify because one of the causes alleged was covered by the policy. The court stated:
We need not reach the issue of whether the wording of the exclusionary clause was meant to apply to the use or operation of a vehicle without permission or authorization of the insured. Instead, we find coverage based on the fact that there are allegations of negligence that *20 appear independent of ownership, maintenance, operation, or use of an automobile  that is, that Centermark failed to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers ... while one proximate cause of the damage may have been the use of an automobile owned by Centermark, which was clearly excluded from coverage, a concurrent cause may have been Centermark's negligence in supervising and training employees, a covered risk.
Id. at 101. The court reasoned that in a case in which negligent hiring and training are alleged as thereby resulting in an impermissible use of the vehicle causing the bodily injury, the "ownership or use of an automobile is incidental, not an essential element of the negligence claim." Id. at 103 (emphasis added).
¶ 42. In making a coverage determination one has to look at the facts and the asserted theories of liability. For example, on negligent entrustment if the owner of the vehicle knowingly gives a vehicle to someone who is incompetent to drive and trusts him with it, that independent act may then cause the accident that occurs or may be a contributing cause of the accident; however, since the owner was not driving neither liability policy or automobile policy will cover the owner's negligence. If the owner allows someone to drive knowing that the brakes are bad and this causes or contributes to an accident; the owner's negligence under the majority decision is not covered under either the automobile or general liability policy. If under a principal or agent, the principal is not covered under an automobile or general liability policy since the principal was not driving the vehicle and the automobile exclusion precludes the general liability coverage. Finally, a parent who signs for a minor to obtain a driver's license between the ages of fifteen and seventeen years old agrees to be responsible for any negligence of the minor's use of the vehicle. Again, neither the automobile policy nor the homeowner's general liability policy will cover the parent under the majority's opinion.
¶ 43. A reasonable interpretation of these decisions is the auto-use exclusion should not apply when the negligence or cause-in-fact of the injuries is independent of the vehicle use, or where the vehicle use is incidental to the negligence claim, especially when negligent hiring or training are alleged as in the present case. Titan and the precedents upon which it relies do not contain any legal analysis that justifies the denial of Meyers's claims. Summary judgment should have been denied; and therefore, I would reverse the circuit court's judgment and remand this case for trial. Accordingly, I dissent.
EASLEY, J., JOINS THIS OPINION.
NOTES
[1] Naturally, neither of the auto liability policies had any exclusion pertaining to accidents arising out of the ownership, maintenance, use or entrustment to others of any automobile, since these policies were specifically to cover automobile accidents.
[2] The facts of Warren are as follows: Fifteen-year-old Daniel Shields spent a Friday night with his grandparents, Margaret and Jack Glascoe, at their home in Jackson. On the following morning, Daniel, who had received his learners' permit approximately thirty days before, drove Margaret to Yazoo City in Jack's automobile. On the return trip, Daniel collided with a vehicle driven by Lincoln Warren, Sr. Warren was seriously injured, and the Glascoes' automobile insurance did not fully compensate him. Warren sued American Family Home Insurance Company (American Family) which had issued a homeowners' insurance policy to the Glascoes. Warren also sued United States Fidelity & Guaranty Company (USF & G) which had issued a general insurance policy to Jack Glascoe d/b/a Glascoe Corner Grocery. Warren theorized that the Glascoes were negligent for entrusting their vehicle to their grandson and that they were negligent in supervising their grandson. The trial court granted summary judgment to American Family and USF & G, finding that their respective policies excluded damages for injuries arising from the Glascoes' ownership of a motor vehicle.
[3] The present policy provides:

a. We [Credit General] will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies ...
b. This insurance applies to `bodily injury' or `property damage' only if:
(1) The `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory'; and
(2) The `bodily injury' or `property damage' occurs during the policy period.'
[4] The specific allegations are that B & S proximately caused Meyers injuries by failing to:

(1) have in place adequate procedures for hiring qualified truck drivers;
(2) properly qualify truck driver applicants;
(3) assess and examine the level of knowledge of truck driver applicants;
(4) increase the level of knowledge of employees employed as truck drivers;
(5) observe, evaluate and critique truck drivers on a continuing basis; (6) hire new truck drivers in accordance with established written requirements;
(7) have an adequate training program;
(8) adequately and professionally monitor their drivers' development activities;
(9) have an adequate safety program in place
(10) operate their trucks in a non-overloaded condition; and
(11) to non-negligently perform gratuitous duties.