United States Court of Appeals
Fifth Circuit

**F I L E D**

January 11, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

---

**No. 04-61009**

---

**AXA RE PROPERTY & CASUALTY INSURANCE COMPANY,**

**Plaintiff-Appellee,**

**versus**

**DUSTIN L. DAY, Etc.; ET AL.,**

**Defendants,**

**DUSTIN L. DAY, Individually and on Behalf of His Child, MASON DAY,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(3:02-CV-1306)**

---

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

Dustin L. Day challenges the district court's refusal to abstain from adjudicating this declaratory judgment action filed by AXA Re Property & Casualty Insurance Company. Prior to its being filed, Day had filed suit in Louisiana state court against the

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Estate of Gary Kinchen; Kinchen, a Mississippi resident, had been insured by AXA. In the alternative, Day contests the summary judgment awarded AXA under Mississippi law. Day maintains the term at issue in the AXA policy ("use") is ambiguous and, therefore, should be construed to provide coverage. **AFFIRMED**.

## I.

The facts are not in dispute. On 14 January 2001, Christina Walker met Kinchen in Bogalusa, Louisiana. Later that day, they retired to Kinchen's truck and attached horse trailer. The trailer included sleeping quarters, which utilized an external gasoline-powered generator. Kinchen, who had attached the generator post-purchase, activated it. The following day, he and Walker were found dead due to carbon monoxide poisoning from alleged ventilation defects with the generator.

In January 2002, Dustin L. and Mason Day, Walker's heirs, filed an action in Louisiana state court against Kinchen's estate, claiming negligence by Kinchen in operating the trailer and generator that resulted in Walker's death. That action is pending.

At the time of Walker's and Kinchen's deaths, Kinchen was insured by AXA under a commercial automobile liability policy. In August 2002, based on diversity jurisdiction, AXA filed this declaratory judgment action in federal court in Mississippi, seeking a declaration that AXA was not required to defend and/or indemnify Kinchen in the pending Louisiana action. AXA also moved

for summary judgment.  In addition to opposing that motion, Day moved to dismiss this action or transfer it to the Louisiana state court, claiming it constituted forum shopping to avoid application of Louisiana law.

The district court denied Day's motion to dismiss or transfer because Day had not previously filed an action against AXA in Louisiana state court.  Furthermore, the court held the requisite factors for abstention were lacking:  (1) no pending state action existed where all the matters in controversy could be fully litigated; (2) AXA did not file its declaratory judgment action in anticipation of litigation with Day; (3) AXA had not engaged in forum shopping; (4) no inequities existed in permitting AXA to proceed with this action; (5) the federal court was a convenient forum for litigation relating to the AXA policy because it was created and made effective in Mississippi; and (6) judicial economy would not be contravened by retaining the action. ***AXA Re Prop. & Cas. Ins. Co. v. Day***, No. 3-02-cv-1306WS (S.D. Miss. 30 Sept. 2004) (unpublished).

Concomitantly, the district court awarded summary judgment to AXA, holding, under Mississippi law: "When a policy insures an automobile for the 'use' of the automobile, the chain of causation between the use of the automobile and the injury must be direct". ***Id.*** at *11 (*quoting **Jackson v. Daley***, 739 So. 2d 1031, 1041 (Miss. 1999) (en banc)).  The district court declined to "extend coverage

3

if the use of the automobile is within the line of causation, but is distinctly remote". *Id.* Because the generator was not part of, or built into, the trailer, the district court held Day failed to state a claim for bodily injury arising from the "use" of a motor vehicle.

## II.

Day claims the district court erred by not abstaining from hearing AXA's declaratory judgment action. If unsuccessful on that issue, he claims the term "use" in the policy covers use of the generator. (AXA claims the policy's pollution exclusion bars coverage. Because we hold the policy does not cover use of the generator, we need not reach this issue.)

## A.

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration". 28 U.S.C. § 2201(a). This Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants". *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."

4

*Id*. at 288. ***Brillhart v. Excess Insurance Co. of America***, 316 U.S. 491, 495 (1942), explained it would be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues ... between the same parties". Accordingly, the non-abstention decision is reviewed for abuse of discretion. ***Tex. Ass'n of Bus. v. Earle***, 388 F.3d 515, 518 (5th Cir. 2004).

***Orix Credit Alliance, Inc. v. Wolfe***, 212 F.3d 891 (5th Cir. 2000), provides three inquiries for district courts in determining whether to adjudicate a declaratory judgment action: (1) is it justiciable; (2) does the court have the authority to grant such relief; and (3) should it exercise its discretion to decide the action based on the factors stated in ***St. Paul Insurance Co. v. Trejo***, 39 F.3d 585 (5th Cir. 1994), discussed *infra*. *See* ***Sherwin-Williams Co. v. Holmes County***, 343 F.3d 383, 387 (5th Cir. 2003).

1.

Because the district court addressed the last two ***Orix*** steps, by implication it found this action justiciable (first ***Orix*** step). For that first step, "the question ... is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment". ***Md. Cas. Co. v. Pac. Coal & Oil Co.***, 312 U.S. 270, 273 (1941). For a declaratory judgment

action to be justiciable, it "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop". ***Brown & Root, Inc. v. Big Rock Corp.***, 383 F.2d 662, 665 (5th Cir. 1967). Whether the policy provides coverage presents a live controversy.

2.

Under the second ***Orix*** step, the district court properly concluded it had authority to grant declaratory relief because Day had not previously filed a claim against AXA in state court. Generally,

> a district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, *and* 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.

***Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.,*** 996 F.2d 774, 776 (5th Cir. 1993) (emphasis in original).

Although Day had filed an action against Kinchen's estate and ABC Insurance Company in Louisiana state court, AXA was never made a defendant. Restated, no declaratory defendant had filed an action in state court against the declaratory plaintiff. Additionally, Day's action against Kinchen's estate involves a different issue than is present in this action. The state-court

6

action concerns whether Kinchen is liable for Walker's death, which is wholly distinct from the issue in this action: whether the AXA policy provides coverage and a corresponding duty to defend and/or indemnify Kinchen's estate.

Finally, for this second step, a district court must also consider whether the Anti-Injunction Act, 28 U.S.C. § 2283, bars relief. *Id.* The Act states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". 28 U.S.C. § 2283. Because there is neither a state court action against AXA, nor a state court action that involves the same issues presented in this action, the district court properly concluded that the Act does not bar relief.

3.

Finally, the district court properly exercised its discretion in refusing to abstain. *Trejo*, 39 F.3d at 590-91, identified seven nonexclusive factors for a district court to consider when deciding whether *Brillhart* abstention should apply to a declaratory judgment action:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain

7

precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, ... 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy ... and [7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

(Internal citation and quotation marks omitted.)  The district court considered all of the *Trejo* factors.

First, because AXA is not a party to the Louisiana action, the court correctly concluded no pending state action exists where all the matters in controversy could be fully litigated.  Additionally, it correctly determined that the next two factors — whether AXA (1) filed this action in anticipation of an action by Day and (2) engaged in impermissible forum shopping — supported retaining jurisdiction.  Notably, Day concedes AXA filed this action not in anticipation of one by Day, but instead as a response to the Louisiana action.  Furthermore, AXA has not engaged in improper forum shopping merely by filing a declaratory action in federal court availing itself of diversity jurisdiction.

[T]he fact that federal forums are sought by some [plaintiffs] in an attempt to avoid the state court system, does not necessarily demonstrate impermissible forum selection when the declaratory judgment out-of-state plaintiff invokes diversity. Rather it states the traditional justification for diversity jurisdiction, to protect out-of-state defendants.

8

*Sherwin-Williams*, 343 F.3d at 399 (internal citation and quotation marks omitted). Instead, a court is more likely to find a plaintiff engaged in impermissible forum shopping where the federal action would change the applicable law. *See id.* at 397, 399; *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983). Because the issues in the Louisiana state court action and this action are distinct, it is entirely plausible that Louisiana tort law will apply to Kinchen's liability *vel non*, while in this action, as discussed *infra*, Mississippi contract law governs the scope of the policy's coverage.

The district court also correctly considered the fourth factor: because there was no parallel state court proceeding involving the same issue, AXA did not inequitably gain precedence in time or change a previously selected forum for the declaration it sought. Fifth, the district court correctly concluded the Southern District of Mississippi is a convenient forum to litigate the coverage dispute because the policy was created, and made effective, in Mississippi. Next, judicial economy is not contravened by retaining the action because no other proceeding is able to consider the coverage dispute; again, AXA is not a party to the Louisiana litigation. Finally, the seventh factor — whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state court suit between the same parties is

9

pending — weighs strongly in AXA's favor.  Because AXA is not a party to the Louisiana proceeding, and because any ruling by the Louisiana court will relate to Kinchen's liability, the pending disposition of the Louisiana action is not relevant to this action.

B.

Accordingly, at issue is the summary judgment awarded AXA on the basis that "use" of a covered vehicle under the AXA policy did not include use of a generator attached externally to Kinchen's trailer.  That judgment is reviewed *de novo*.  ***United States v. Lawrence***, 276 F.3d 193 (5th Cir. 2001); ***Am. Guar. & Liab. Ins. Co. v. 1906 Co.***, 129 F.3d 802, 805 (5th Cir. 1997).  As noted, there are no material fact issues.  "The interpretation of insurance policy language is a question of law." ***Eott Energy Pipeline Ltd. P'ship v. Hattiesburg Speedway, Inc.,*** 303 F. Supp. 2d 819, 822 (S.D. Miss. 2004) (internal citation and quotation marks omitted).

The AXA policy reads in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or *use* of a covered "auto".

(Emphasis added.)  The parties concede the trailer is a "covered auto".  Moreover, Kinchen and Walker were using the trailer, and Walker suffered "bodily injury" as a result.  Because the policy

10

*does not define the term "use"*, at issue is whether that injury "result[ed] from the ... use" of the trailer.

For this diversity action, we apply state substantive law. ***Erie R. Co. v. Tompkins***, 304 U.S. 64, 78-80 (1938).  In deciding which State's law to apply, we use the choice of law rules of the State in which the action was filed — Mississippi.  ***Smith v. Waste Mgmt., Inc.***, 407 F.3d 381, 384 (5th Cir. 2005).

Although Walker and Kinchen died in Louisiana, like the district court, we conclude Mississippi law governs because it has "the most substantial contacts with the parties and the subject matter of the action".  ***Hartford Ins. Co. v. Sheffield***, 808 So. 2d 891, 895 (Miss. 2001).  Not only was the policy purchased in Mississippi, but also, Mississippi is:  Kinchen's domicile and residence;  the trailer's usual location;  where the policy was negotiated;  and the place where any performance on the contract would occur.  *See* ***Boardman v. United Servs. Auto. Ass'n***, 470 So. 2d 1024, 1032 (Miss.), *cert. denied*, 474 U.S. 980 (1985) (adopting the center of gravity test for Mississippi's choice of law analysis).  In this regard, the parties do *not* challenge application of Mississippi law.

In applying Mississippi law, we first determine "whether ... any final decisions of the Mississippi Supreme Court are dispositive".  ***Centennial Ins. Co. v. Ryder Truck Rental, Inc***., 149 F.3d 378, 382 (5th Cir. 1998).  If no final disposition is directly

11

on point, we must make an "***Erie***-guess", predicting how that court would rule. ***Id.***; *see also* **Am. Guar. & Liab. Co.**, 129 F.3d at 807. We make our forecast based on

> (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

***Centennial Ins. Co.***, 149 F.3d at 382.

Acknowledging that no Mississippi Supreme Court decision is directly on point, Day seeks a broad construction of "use". Day claims Walker's death resulted directly from Kinchen's and Walker's use of the truck and trailer because the trailer could not have been towed to Louisiana without the truck. Furthermore, at all times leading up to, and during, the accident, the trailer was attached to the truck and was operated by Kinchen.

Additionally, to support that broad reading, Day cites Mississippi Supreme Court cases that have liberally interpreted the term "use" under the State's Uninsured Motorist Act (UM Act), MISS. CODE ANN. § 63-15-43. *See **Harris v. Magee***, 573 So. 2d 646 (Miss. 1990) (holding injuries suffered by driver resulted from use of his truck although he had just exited it), *overruled on other grounds by **Meyers v. Am. States Ins. Co.***, No. 2003-CA-01669-SCT, 2005 WL

12

1384698 (Miss. 9 June 2005); ***Stevens v. U.S. Fid. & Guar. Co.***, 345 So. 2d 1041 (Miss. 1977) (holding injuries to operator of a wrecker who had left it and was hit by an oncoming automobile arose out of the use of the wrecker).  Day claims these cases suggest the Mississippi Supreme Court would hold Walker's death resulted from the use of the trailer.

Lastly, Day contends the policy has more than one reasonable interpretation; and, therefore, under Mississippi law, its meaning must be construed in favor of coverage.  Any ambiguous term, under Mississippi law, is to be strictly construed against the insurer. ***Nationwide Mut. Ins. Co. v. Garriga***, 636 So. 2d 658, 662 (Miss. 1994).

In supporting the summary judgment, AXA claims Mississippi Supreme Court precedent, outside of the uninsured motorist context, suggests a limited interpretation of "use".  *See* ***Meyers v. Miss. Ins. Guar. Ass'n***, 883 So. 2d 10 (Miss. 2003) (en banc); ***Jackson***, 739 So. 2d 1031.  These cases suggest that use of an automobile must be the but-for cause of the injury.  Therefore, according to AXA, Walker's death would not trigger liability because the use of the trailer was not the but-for cause of death; instead, it was the use of the external generator.

A bedrock principle of contract law is that, where the terms of a contract are clear and unambiguous, they must be interpreted as written.  *E.g.,* ***Farmland Mut. Ins. Co. v. Scruggs***, 886 So. 2d

13

714, 717 (Miss. 2004); *Sumter Lumber Co. v. Skipper*, 184 So. 296, 298 (Miss. 1938) ("When the language of the ... contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all parts as written.").

Each party urges a different interpretation of "use". Of course, simply because parties disagree about the meaning of a contract term does not, as a matter of law, make it ambiguous. *Burton v. Choctaw County*, 730 So. 2d 1, 6 (Miss. 1997). Instead, ambiguity exists where "a reasonable person could have understood the terms to have more than one reasonable meaning". *Scruggs*, 886 So. 2d at 718. Pursuant to Mississippi Supreme Court precedent, the term employed in the AXA policy is *not* ambiguous.

Again, the injury must "result[] from the ... use of" the trailer. Obviously, the injury resulted directly from the use of the generator while the decedents were in the trailer. Although no case is directly on point, several Mississippi Supreme Court decisions provide direction.

*Meyers* interpreted an exclusion in a general commercial liability policy for bodily injuries arising "out of the ownership, maintenance, [or] use" of an automobile. 883 So. 2d at 13-14. In *Meyers*, the plaintiff was injured as a result of a tractor-trailer (insured under the policy) colliding with his vehicle. The

14

plaintiff claimed the exclusion did not apply because he had alleged other but-for causes of the accident aside from the use of the tractor-trailer, including various theories of negligence. In other words, the "use" exclusion should not apply because, but for the negligent hiring by the defendant's supervisor, as well as the company's negligent maintenance of the trailer, the accident would not have occurred. The Mississippi Supreme Court held the exclusion applicable. *Id*. at 16-17. Under its reasoning, the term "use" applied to injuries that would not have occurred *but for* the use of the truck, irrespective of other legitimate causes for the injury. ***Meyers*** stands for the proposition that the but-for cause was essentially the same as the proximate cause of the injury, and other causes would not make the exclusion inapplicable.

Similarly, the 1999 decision in ***Jackson***, 739 So. 2d 1031, relied on by the district court, interpreted a liability policy to provide coverage for a death resulting from the "ownership, maintenance, or use" of a county vehicle: while driving his vehicle, the decedent was killed on hitting dirt placed by a county dump truck near the roadway. The Mississippi Supreme Court held the policy provided coverage because the "dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the [county vehicle]". *Id*. at 1041 (quoting ***Merchs. Co. v. Hartford Accident & Indem. Co.***, 188 So. 571, 572 (Miss. 1939)). In so holding, the court articulated the

15

appropriate test for determining when liability will be triggered by "use" of an automobile: "When a policy insures an automobile for the 'use' of the automobile, the chain of causation between the use of the automobile and the injury *must be direct. We will not extend coverage if the use of the automobile is within the line of causation, but is distinctly remote*." **Id**. (internal citation omitted; emphasis added). Furthermore, "the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation". **Id**. (quoting **Hartford**, 188 So. at 572). In other words, the injury must essentially be proximately caused by the use of the vehicle.

Under the **Meyers** and **Jackson** standards, the AXA policy does not provide coverage. First, although the use of the trailer may have been a cause of Walker's death, its use was not the *direct cause* of the injuries. Indeed, Kinchen and Walker would have suffered no injuries had they used the trailer *without* operating the externally-attached generator. Thus, the cause of their injuries was the generator, *not* the trailer.

Day's above-discussed reliance on Mississippi Supreme Court cases that liberally construed the term "use" in the context of the UM Act, *see* **Stevens**, 345 So. 2d 1041; **Harris**, 573 So. 2d 646, is misplaced. The Mississippi Supreme Court has directed that "the

16

language of the ... UM Act must be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage". ***Johnson v. Preferred Risk Auto. Ins. Co.***, 659 So. 2d 866, 871-72 (Miss. 1995) (quoting ***Aetna Cas. & Sur. Co. v. Williams***, 623 So. 2d 1005, 1008 (Miss. 1993)). That liberal construction is based on the remedial nature of the UM Act — namely to provide the same protection for a person injured by an uninsured motorist as if he had been injured by a motorist with a standard liability policy. *See* ***Medders v. U.S. Fid. & Guar. Co.***, 623 So. 2d 979, 991 (Miss. 1993). Obviously, these policy concerns are not present here.

## III.

For the foregoing reasons, the judgment is

***AFFIRMED.***

17